MAY TERM, 1909.    155

Evansville, etc., Trac. Co. *v.* Evansville Belt R. Co.—44 Ind. App. 155.

EVANSVILLE AND SOUTHERN INDIANA TRACTION
COMPANY *v.* EVANSVILLE BELT RAILWAY
COMPANY.

[No. 6,478.    Filed February 4, 1909.    Rehearing denied April 23,
1909.    Transfer denied June 11, 1909.]

1.  MUNICIPAL CORPORATIONS.— *Franchises.— Limitations.— Rail-
roads.—Street Railroads.—*A city's grant to a railroad company
of a franchise to run its trains upon a certain street does not
prevent the grant of a franchise to a street railroad company to
run its cars across such street, the railroad company's right being
taken subject to the right of the city to authorize the use of the
street for any proper purpose implied from the street's dedica-
tion.    p. 161.

2.  CONTRACTS.—*Fixing Rights of Railroad Company and Street
Railroad Company as to Street Crossings.—Consideration.—*A con-
tract by which a street railroad company agrees to construct and
maintain a crossing over a railroad track in a street, and to yield
at all times the preference in crossing to the railroad company,
is supported by a valid consideration, there being no statute reg-
ulating such matters.    p. 161.

3.  CONTRACTS.—*Parties.—Validity as to Others.—*Parties to a con-
tract, and those in privity of estate or contract, are the only ones
bound thereby.    p. 162.

4.  CONTRACTS.— *Parties.— Assignees.— Interurban Railroads.—*An
interurban railroad company which purchased the property of a
street railroad company at a sale under a decree of foreclosure
of a mortgage executed prior to the time of the making of the
contract sued upon, is neither a legal nor an equitable assignee
of such contract.    pp. 163, 164.

5.  PLEADING.— *Complaint.— Contracts.—Assumption of.—How Al-
leged.—*A complaint by a railroad company against an interurban
railroad company for the breach of a contract executed by such
interurban company's predecessor street railroad company, which
alleges that the defendant interurban company acquired "all the
rights, franchises and property of the street railroad company,
and assumed and became bound by all its contracts and obliga-
tions, including said contract," fails to show the assumption of
such contract.    p. 163.

6.  CONTRACTS.— *Assumption of.— Street Railroads.— Purchase of
Property of.—*The purchaser of all of the property of a street
railroad company cannot from the fact of such purchase be held

to have assumed the performance of a contract between such street railroad company and a railroad company relative to the maintenance of a crossing. p. 164.

7. PLEADING.—*Complaint.*—*Contracts.*—*Assumption of.*—*Consideration.*—In order to show that an interurban railroad company in purchasing the property of a street railroad company assumed such street railroad company's contract to maintain a railroad crossing, the complaint must show a consideration therefor, none being implied from the fact of purchase of the property. p. 164.

8. CONTRACTS.— *Covenants.*— *Privity of Contracts and Estate.*— *Street Railroads.*—*Crossings.*—The purchaser of all of the property of a street railroad company at a sale upon a decree of foreclosure of a mortgage executed prior to the execution, by the street railroad company, of the crossing maintenance contract in question, is not privy by contract, or in estate, to such maintenance contract. p. 164.

9. CONTRACTS.—*Assumption of.*—*Interurban Railroads.*—*Equity.*— An interurban railroad which purchases the entire property of a street railroad company at a sale under a decree of foreclosure of a mortgage executed prior to the execution by the street railroad company of the crossing maintenance contract in question, is not equitably bound to perform such crossing maintenance contract, such interurban company's title being in no way dependent upon, or derived through, or by virtue of, such maintenance contract. p. 165.

10. CONTRACTS.— *Railroads.* — *Crossings.* — *Purchasers.* — *When Bound.*—The purchaser of railroad property is not ordinarily bound by crossing contracts, without notice thereof. p. 168.

From Vanderburgh Circuit Court; *L. O. Rasch,* Judge.

Action by the Evansville Belt Railway Company against the Evansville and Southern Indiana Traction Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Stilwell & Kister* and *Woodfin D. Robinson,* for appellant. *Iglehart & Taylor* and *J. E. Williamson,* for appellee.

RABB, J.—On July 18, 1892, and prior thereto, the appellee by virtue of a franchise duly granted by the proper municipal authorities of the city of Evansville, owned and operated a line of railroad through said city, and crossing Franklin street, one of the public streets thereof. Subsequent to the granting of said franchise to appellee, and the

MAY TERM, 1909.    157

Evansville, etc., Trac. Co. *v.* Evansville Belt R. Co.—44 Ind. App. 155.

construction and operation of its said road thereunder, said city duly granted to the Evansville Street Railroad Company a franchise to construct and operate an electric street-car line over and upon said Franklin street, and in order fully to enjoy its said franchise it was necessary for said street railroad company to construct its track across the appellee's railroad track. Appellee denied the street railroad company's right to cross its track at grade, without the assessment and payment of damages, and thereupon, on said July 18, 1892, the two companies entered into the following agreement:

"This agreement made and entered into July 18, 1892, by and between the Evansville Belt Railway Company, a corporation, party of the first part, and the Evansville Street Railroad Company, a corporation, party of the second part, witnesseth: That whereas said first party owns and operates a railroad through the city of Evansville, in the State of Indiana, the main track of which said road crosses Franklin street in said city of Evansville, and whereas the party of the second part is in the act of constructing and intends to operate an electric railroad in the city of Evansville, Indiana, and desires to cross said first party's railroad track at the intersection of said track with said Franklin street in the city of Evansville, and whereas it is mutually agreed by and between the parties hereto, upon the terms and conditions herein set out, that said second party may cross said first party's track, and put down at said points of crossing regular, approved railroad crossing frogs at the intersection of said tracks, respectively, in said Franklin street, now, therefore, in consideration of the premises, and the consent of said first party to such crossing, and to the putting down of said crossing by said second party, it is hereby agreed that said second party shall furnish all proper and necessary iron and steel, ties and labor, in and about the construction, maintenance and repairs of said crossing at said point, at its own expense, and without any cost or charge whatever to the first party, said crossing frogs to be made of such pattern and weight of steel as shall be approved by the chief engineer or other proper officer of the first party. The timber on which such frogs are placed to be of such dimension and quality as shall be

158    APPELLATE COURT OF INDIANA,

Evansville, etc., Trac. Co. *v.* Evansville Belt R. Co.—44 Ind. App. 155.

approved by said engineer. Said second party further agrees at all times to keep said crossing free, unobstructed, in good order and repair, and up to the grade of the street at said intersection, so as not in any way to interfere with the use of said Franklin street, and crossings by the public or said first party, and to conform to all ordinances of said city in such behalf, and whenever necessary to reconstruct or repair said construction and repairing shall be made under the supervision of the roadmaster of the first party, and shall be made subject to his satisfaction, so far as relates to the track and property of said first party, and in case, in the judgment of the roadmaster, it should become necessary at any time to make any repairs at said points for the purpose of properly maintaining said crossings, said second party shall make the same to the satisfaction of the roadmaster, upon receipt from him of five days' notice in that behalf, and the work shall be conducted so as not to interfere with the running of trains, and should said second party at any time, upon receipt of said notice to make repairs, fail to make said repairs within the time prescribed, said first party may make the same, and said second party agrees to reimburse and repay said first party the costs thereof.  *  *  *  The second party shall have the right to erect and maintain poles and crosswires upon the right of way of the first party alongside the tracks hereinbefore permitted to be laid on such right of way at said crossing of the same with said Franklin street for the purpose of carrying the trolley wires of said second party, together with guard wires and anchorages, at such places and in such manner as shall be approved by the chief engineer of the first party, or such other officer as it may select. Said trolley wires are to cross said railroad track of the first party at the intersection of said street at the height of not less than twenty-two feet in the clear above the top of the rails of said first party's track, and said second party shall at all times maintain said trolley wires at the hight before mentioned. In the use of the crossing at said intersection the cars of the second party shall be brought to a stop at a distance of not less than twenty feet nor more than one hundred feet from the railroad track of the first party, and shall not pass over said railroad track of the first party until it shall be entirely safe for them to do so; nor shall the same pass over without first receiving proper signal from a conductor or other

MAY TERM, 1909. 159

Evansville, etc., Trac. Co. *v.* Evansville Belt R. Co.—44 Ind. App. 155.

employe of said second party. And whenever a street-car of the line of said second party's railroad and a locomotive or train upon the railroad of said first party's railroad be approaching said crossing at the same time, the priority of right in crossing shall always be yielded by said second party to said first party."

The appellant is the successor in right and interest to the street railroad company: (1) Through the foreclosure and sale of the property and franchise of the street railroad company upon a mortgage given to a trustee on January 1, 1892, for the benefit of the bondholders of said company, by which the Evansville Electric Railway Company became the owner of the street-car lines; (2) by a deed of transfer from the electric railway company to the appellant.

The crossing of the tracks of the two companies became out of repair, and thereupon, pursuant to the terms of the contract, the appellee's roadmaster, on June 27, 1905, gave the Evansville Electric Railway Company, which then owned and operated the street-car line, notice to repair the same, which said company failed to do, and appellee made the necessary repairs at a cost of $424.24. This action was brought to recover from appellant the expenses so incurred by appellee.

The action is based upon the contract which is made a part thereof, coupled with averments showing that both companies are common carriers of passengers; that they operate steam and electric cars over said crossing, carrying their employes and passengers, and averring the necessity of contractual regulations of their respective duties regarding the crossing, and that appellant and its immediate predecessor in right assumed and became bound by all the obligations of the original company.

Appellant's demurrer to this complaint was overruled. It thereupon answered, setting up the franchise granted the original company by the municipal authorities of the city of Evansville to construct the street-car line on Franklin street, and averring that on July 18, 1892, it had constructed its

160    APPELLATE COURT OF INDIANA,

Evansville, etc., Trac. Co. *v.* Evansville Belt R. Co.—44 Ind. App. 155.

line of road up to both sides of appellee's track, crossing said Franklin street, and that the appellee refused to permit said company to construct its said track by constructing proper railroad crossings and connections where the same crossed appellee's track, as aforesaid, unless said street railroad company would enter into the contract sued upon, and that, in order to avoid violence at the hands of the appellee and its employes, said street railroad company entered into said contract, and under said agreement made what is known as a "jump crossing," and did not thereby interfere with or restrict appellee's use of its property, or lessen its value. Appellant claims that, under the facts shown in the answer, the appellee is not entitled to recover more than $212.12, for which offer is made by appellant to confess judgment.

It is further averred that prior to the making of the contract sued upon the Evansville Street Railroad Company had mortgaged all of its property and rights, and that upon a foreclosure of said mortgage and sale of said property under said foreclosure proceeding the Evansville Electric Railway Company purchased the same, and, under the title thus acquired, entered into the possession of the road, and operated the same until December 30, 1906, when the same was, by deed, conveyed to appellant.

Appellee's demurrer to this answer was sustained, and, appellant refusing to plead further, judgment in favor of appellee for $424.24 was rendered on the demurrer.

The errors assigned here are the overruling of appellant's demurrer to the complaint, and the sustaining of appellee's demurrer to appellant's answer.

It is contended by appellant, in argument, that under the pleadings it is shown: (1) That the contract sued upon is not supported by a valuable consideration; (2) that, the appellant not being a party to the contract, the averments of the complaint are insufficient to show a liability on its part under the same.

The argument is that the appellee held whatever rights

it enjoyed in the public street subject to the use of the public, among which was the right of the city to authorize the

1. construction and operation of a street-car line along and over the same; that appellee had no property rights to be condemned, and none that it could grant in the crossing, and that the sole consideration for the contract sued upon, as it appears upon its face, and the only thing the appellee contracted to give appellant for all the contractual stipulations of the contract on the part of the street railroad, was the right to cross its track, and we are cited by appellant to a large array of authorities holding that the use of a public street in a city or town, for the purpose of a street-car line, is such use as was contemplated in the original dedication or appropriation of the street, and that, therefore, when a steam road has been granted the right to occupy a public street in a city or town, it takes the right subject to the power of the city to authorize the construction of a street-car line over the same, and that when it is proposed by proper means, and with due regard for the rights of an existing road, to cross such road's tracks on the public streets of the town or city with the track of a new street railroad company, which has been duly granted a franchise to construct a street-car line over and upon such street, the steam road has no right to object to the making of such crossing. We recognize that this is the established law in this State on this subject. *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 26 L. R. A. 337, 47 Am. St. 264; *Chicago, etc., R. Co.* v. *Hammond, etc., Electric R. Co.* (1898), 151 Ind. 577; *Pittsburgh, etc., R. Co.* v. *Browning* (1904), 34 Ind. App. 90, and cases cited.

Conceding that no right of way over the crossing was acquired by the street railroad company, or was granted by the appellee by virtue of the contract sued on, yet

2. it does not follow that the contract was invalid for want of a consideration. The street railroad com-

pany and the appellee were common carriers of passengers, owing a high duty to guard and protect their passengers. The intersection of their lines greatly increased the hazard, not only of their passengers, but also of their servants operating their cars and trains, and of their property; and when the rights of such intersecting roads to a crossing are equal, and the law and the terms of their franchises leave unsettled the details as to the manner in which the crossing is to be effected, maintained and guarded, these matters may, with great propriety, become the subject of contract between the companies owning such intersecting lines, and their mutual protection from the perils of the crossing alone furnishes a sufficient consideration for any contract they may make on the subject. Both the rights of the parties and the interest of the public require that contracts so entered into shall be upheld, and courts will not inquire into the manner in which the burden imposed by the contract is adjusted between the contracting parties.

None of the many cases, which the industry of counsel has presented to us, in support of the contention that the contract sued upon is without consideration, involves the question of the validity of contracts between street railroad companies and steam railroad companies, relating to their rights and duties with reference to the crossing of their tracks. They involve disputes over the rights of the respective companies, under the law, to the crossing, unaffected by any contractual relations between them. We think the contract sued upon was supported by a valid consideration, and, as between the contracting parties thereto, was valid and enforceable.

The appellant, however, was not a party to the contract, and the obligations of a contract are ordinarily limited to the parties by whom they are made, and those who stand in privity with them, either in estate or contract. *Spencer's Case* (1583), 5 Coke 16, 1 Smith's Lead.

Cas. (8th Am. ed.), *68, *103, and notes, (9th Am. ed), 174, and notes, (11th Eng. ed.), 55, and notes; *Webb* v. *Russell* (1789), 3 T. R. 393; *Keppell* v. *Bailey* (1834), 2 M. & K. 517; *Masury* v. *Southworth* (1859), 9 Ohio St. 340; *Glenn* v. *Canby* (1865), 24 Md. 127; *Fitch* v. *Johnson* (1882), 104 Ill. 111; *Kettle River R. Co.* v. *Eastern R. Co.* (1889), 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; *Junction R. Co.* v. *Sayers* (1867), 28 Ind. 318; *Bloch* v. *Isham* (1867), 28 Ind. 37, 92 Am. Dec. 287; *Graber* v. *Duncan* (1881), 79 Ind. 565; *Wells* v. *Benton* (1886), 108 Ind. 585.

And unless it is shown by the facts pleaded that the appellant is in privity of contract or privity of estate with the street railroad company, whose stipulation is sought to be enforced against it, or there is some equitable ground upon which appellant can be held bound to perform such stipulation, the appellee is not entitled to recover. The appellant is not shown to be either the legal or equitable assignee of the contract sued upon, and it could not, on that account, be held as privy to the contract.

Appellee points us to the averments in the complaint to the effect that the Evansville Electric Railway Company after the execution of the contract, acquired "all the rights, franchises and property of the street railroad company, and assumed and became bound by all its contracts and obligations, including said contract;" and that afterwards the appellant acquired said road's franchise and property, with the same averments regarding the assumption of the obligations, etc. It is not averred how the succeeding company "acquired" the rights, franchise and property of the street railroad company, nor what relation the "assumption of its obligations" had to the acquiring of such rights, franchise and property, nor upon what consideration, if any, such contract of assumption was founded.

Appellee would have us infer that appellant, and its predecessor in right, assumed such obligations in considera-

tion of the transfer to it by the street railroad company of "all its rights, franchises and property," and, unless this inference can be indulged to support the averments of the complaint, no privity of contract by assumption is shown, because no contract by the succeeding corporations, assuming the obligations of the old company, would be enforceable unless founded upon a valuable consideration. The contract of assumption alleged does not import a consideration, and therefore the consideration must appear either by direct averment or necessary inference. *Robinson* v. *Barbour* (1840), 5 Blackf. 468; *Nichols* v. *Nowling* (1882), 82 Ind. 488; *Higham* v. *Harris* (1886), 108 Ind. 246; *Louisville, etc., R. Co.* v. *Barnes* (1896), 16 Ind. App. 312; *Brush* v. *Raney* (1870), 34 Ind. 416; *Leach* v. *Rhodes* (1874), 49 Ind. 291.

While it might be possible to indulge the inference that the consideration of the alleged contract of assumption of obligation by the succeeding corporations, was the transfer to them of the rights, franchise and property of the street railroad company, the averments of the appellant's answer completely overthrow such inference. The answer avers that the Evansville Electric Railway Company acquired "all the rights, franchises and property of the street railroad company," not by contract with, or transfer from, the street railroad company, but by purchase of the same at a sale thereof, made under a decree of foreclosure of a mortgage thereon antedating the contract sued upon. We think, therefore, it cannot be said that there is any privity of contract between the appellant and the parties to the contract that would render the appellant liable thereon. Privity of estate that can render parties liable upon contracts not of their own making relates solely to covenants that run with land, or some interest therein. There is no estate, title or interest in any land, to which the contract sued on relates, and therefore no liability could at-

tach to the appellant because it is privy in "estate" with the parties thereto.

But it is earnestly insisted by appellee that there are strong equitable grounds upon which to hold the appellant bound by the contract of the street railroad company, and these are, that by virtue of the contract the crossing of appellee's tracks was effected by the street railroad company, that the appellant has succeeded to the rights, franchises and property of the street railroad company, has taken possession of its road, is operating the same, and is using the crossing, and thus has obtained the benefits of the contract, and that it is inequitable and unjust that it should reap the benefits of the contract, and not bear its burden; that while the contract cannot strictly be said to be a covenant running with land, or an interest therein, it partakes of that nature, and that the reasons of the rules applying to such covenants apply here.

Numerous cases are cited as supporting appellee's contention, and one to which our attention is specially directed is the case of *Joy* v. *St. Louis* (1890), 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843. In that case the city of St. Louis owned, and through its park commissioners, controlled a certain public park known as Forest Park, adjoining the city. A railroad corporation, known as the St. Louis County Railroad Company, had laid out and owned some detached strips of right of way, between the city and the park. The St. Louis, Kansas City and Northern Railroad Company owned a line of road between St. Louis and Kansas City, and its road extended up to the northern boundary of the park. It also owned some parts of a right of way between the park and the Union Station in the city of St. Louis, and it desired to obtain the right of way for its road through the park, and thence to the Union Station. On August 11, 1875, the two railroad companies and the park commissioners entered into a contract, by the terms of which the roads were granted the

right of way through the park, on a certain line, and the grade marked, defined and approved by the commissioners. The roads, in consideration thereof, agreed to permit other railroads to use their right of way thus granted through the park, and on to the terminus of their roads in the city of St. Louis. At the same time the two railroads entered into a contract, by the terms of which the St. Louis County Railroad Company agreed to convey to the St. Louis, Kansas City and Northern Railroad Company parts of the right of way which it had acquired between the park limits and the station, and one-half of the right of way through the park, for which said right of way a deed was then executed by the St. Louis County Railroad Company to the St. Louis, Kansas City and Northern Railroad Company. The contracts were in writing, and they and the deed were all executed at the same time and formed parts of one transaction. The deed recited that all conveyances of said right of way, "in this deed mentioned, are subject to the terms and conditions upon which the same are granted to the party of the first part." The St. Louis, Kansas City and Northern Railroad Company subsequently became the owner of all the rights, etc., of the St. Louis County Railroad Company, and built and constructed its road on the right of way through the park, and over that which was conveyed to it by the deeds of the last-mentioned company, lying between the park and the city. The St. Louis, Kansas City and Northern Railroad Company subsequently became merged, by consolidation with another company, into the Wabash, St. Louis and Pacific Railroad Company. This company executed a mortgage on all its property, and afterwards became insolvent, and receivers were appointed, who took possession of the property. While the property was in the hands of the receivers, the St. Louis, Kansas City and Colorado Railroad Company applied to said receivers for permission to enter the city over the tracks of said road through the park. Such permission being denied, said company and the city of St. Louis brought an ac-

tion against the receivers to enjoin them from interfering with the use of said property by the St. Louis, Kansas City and Colorado Railroad Company, and it was there held that, under the contract made between the railroad companies and the park commissioners, the St. Louis, Kansas City and Colorado Railroad Company, with the consent of the city, had the right, as against the receivers and those they represented, to use the tracks; that the contract between the two railroad companies and the park commissioners formed a link in the chain of title, by which the succeeding companies acquired the right of way through the park, and that equity would not permit such succeeding companies to hold the right of way thus acquired, and repudiate the obligations imposed by the contract under which it was acquired. The decision of the case is based on the fact that the contract was one under which the company denying the right of the city and the St. Louis, Kansas City and Colorado Railroad Company acquired title to the right of way. All the other cases to which we have been referred have in them the same element, and that is, that the company held bound by the contract acquired title to its property by virtue of the contract which it seeks to repudiate. Such is the case in *Midland R. Co.* v. *Fisher* (1890), 125 Ind. 19, 21 Am. St. 189, 8 L. R. A. 604, and *Lake Erie, etc., R. Co.* v. *Priest* (1892), 131 Ind. 413. They all rest upon the fact that the contract sought to be enforced against the subsequent purchaser is one that inheres to the chain of title by which such purchaser holds the estate. It forms a part of the contract by which his title was acquired.

In this case the appellant acquired no title either to the crossing in question, or to any other part of its road, by virtue of the contract sued upon. It acquired its title to the crossing by virtue of the franchise granted to the street railroad company to construct its road, and this right passed from the street railroad company to it by virtue of the mortgage executed by the street railroad company before the con-

tract was made. The appellant, as well as its predecessor in right, is entitled to the crossing which the franchise gave to it, and the fact that said crossing was put down by the street railroad company, under the contract sued upon, can give the appellee no equity against the appellant. The street railroad company could by no contract, made with any one after the execution of the mortgage, in any manner impair the rights of the mortgagee. It is under the mortgagee, not the mortgagor, that appellant holds the right, franchise and property of the street railroad company; and after the mortgage was foreclosed and the purchaser come into possession of the property, that it should be compelled to forego the use of the property, or adopt the street railroad company's burdensome contract with the appellee, would be grossly inequitable. The contract between these two companies is analogous to a contract between two railroad companies whose lines intersect, and whose rights to the crossing have already been settled.

We apprehend that such contracts would never be held binding upon subsequent purchasers of the railroad property, without notice, and especially would they not be binding upon subsequent purchasers whose title was based upon preëxisting mortgages.

The judgment is reversed, with instructions to the court below to overrule the demurrer to the answers.