James G. **BROADHURST**, Appellant,

v.

Walter P. **MOENNING**, Jr.,
et al., Appellees.

No. 56A05–9304–CV–135.

Court of Appeals of Indiana,
Fifth District.

April 28, 1994.

Robert Leirer Justice, Logansport, for appellant.

Kathryn D. Schmidt, Fred M. Cuppy, Burke Murphy Costanza & Cuppy, Merrillville, for appellees.

SHARPNACK, Chief Judge.

James G. Broadhurst appeals the trial court's entry of summary judgment in favor of Gainer Bank, N.A. ("the Bank") and Walter P. Moenning. We affirm in part and reverse in part.

Broadhurst presents the following restated and renumbered issues for our review:

1. whether Ind.Trial Rule 13(A), which provides for compulsory counterclaims, violates Article I, § 20 of the Indiana Constitution as applied in this case;

2. whether the logical relationship test for determining if a claim is a compulso-

ry counterclaim under T.R. 13(A) is inadequate;

3. whether the trial court erred in granting summary judgment in favor of the Bank; and

4. whether the trial court erred in granting summary judgment in favor of Moenning.

The present case has a lengthy history, including a prior related appeal, *Gainer Bank, N.A. v. Broadhurst* (filed Feb. 20, 1992), Ind.App., No. 08A02–9102–CV–80 ("Case I"). This court's Case I memorandum decision provides a statement of facts useful in understanding the background of the present appeal ("Case II"):

"While operating Northern Supplies, Inc., James Broadhurst executed a note of $302,500 from Gainer Bank[2] on March 7, 1983. The unsecured loan was due on

[2] At the time of the note's execution, the lending bank was Northern Indiana Bank and Trust Company ("NIB"). Subsequently, NIB merged with Gainer Bank. We refer to the banks collectively as Gainer Bank.

March 7, 1984. When the loan was not repaid when due, the bank obtained a mortgage on property called Adams Mill as security. By 1985, the balance Broadhurst owed was $362,131.45. To avoid bankruptcy, Broadhurst entered a 'workout' agreement with Gainer Bank on May 13, 1985. In the workout agreement, Broadhurst agreed to liquidate Northern Supplies, Inc., sell Adams Mill, and two residences on the mill property in order to pay the remaining debt to Gainer Bank. Gainer Bank agreed to release Broadhurst and his wife from personal guarantees on the note, freeze the amount of the debt and not assess further interest. Bank also waived its legal rights and remedies regarding the debt. The workout agreement failed to set a time for performance by Broadhurst.

Broadhurst proceeded to liquidate his business. By May, 1986, only two accounts receivable remained outstanding, and Broadhurst had yet to sell Adams Mill and the two residences. Broadhurst listed the mill and residences with a real estate agent from July 7, 1987 to July 7, 1988, seeking a total of $495,000. In April 1988, J. Jorgensen, an attorney for Gainer Bank, warned Broadhurst that foreclosure was imminent if the mill was not sold. Leslie Robinson, the president of Gainer Bank, also told Broadhurst that the listing price for Adams Mill was too high.

William Brown became interested in the property in the spring of 1988. He submitted an offer on the residences for $119,000 on May 17, 1988 and expected to make an offer on the mill later. Gainer Bank informed Brown they would grant a loan of $107,000 for the purchase of the residences. When the residences were appraised at $101,000, the bank decided it could not lend $107,000, but that it could lend 100% of the appraised value. An appraisal value of $116,000 was made for the mill. After Brown and Broadhurst could not agree about easements for the residences on the mill property and the bank changed the inital [sic] financing conditions, Brown decided instead to make an offer for the entire property. He offered to purchase the mill and residences for $235,000. Broadhurst was still asking for $495,000 for the total property. Broadhurst never responded to Brown's offer, and Brown, therefore, never proceeded to seek financing from Gainer Bank.

Gainer Bank received the amounts from the accounts receivable on November 18, 1988. On November 21, 1988, when $194,185.00 remained due on the note, Gainer Bank filed for foreclosure of its mortgage on Adams Mill. Broadhurst requested specific findings of fact and conclusions of law from the trial court. After the bench trial, the court found that Gainer Bank was responsible for hindering the sale of the residences to Brown and that both Gainer Bank and Broadhurst's failure to cooperate dampened any possible sale of the whole property to Brown. The court further found that Broadhurst asked an unreasonable price for the mill, and that Gainer Bank breached its agreement by failing to exercise reasonable efforts in providing financing for the sale of Adams Mill. The court determined that Gainer Bank had unclean hands and was not entitled to fore-

closure. Additionally, the court found that Gainer Bank had failed to show that a reasonable time for Broadhurst's performance of the agreement had expired."

*Gainer Bank, N.A. v. Broadhurst* (filed Feb. 20, 1992), Ind.App., No. 08A02–9102–CV–80, slip op. 2–4. The Bank appealed to this court in Case I, arguing that several of the trial court's findings of fact were clearly erroneous and that the trial court's conclusions thereon were contrary to law. This court reversed, determining that the Bank was entitled to foreclosure. *Id.* at 12. The Indiana Supreme Court denied Broadhurst's petition to transfer on July 30, 1992.

In Case I, the Bank had filed its complaint for foreclosure on November 21, 1988, in the Carroll *Circuit* Court. Trial was held in that case and, on September 7, 1990, the trial court entered its order from which the Bank appealed as described above. The present action, Case II, was commenced on August 1, 1990, when Broadhurst filed his complaint against the Bank and Moenning, individually and as Vice President of the Bank, in the Carroll *Superior* Court.

Broadhurst's Case II complaint pleads, in pertinent part:

"4. In 1985, Defendant Bank held various debts secured by mortgages and guarantees on property owned by Broadhurst and businesses which he ran, owned or controlled. . . .

5. Broadhurst and his businesses were in financial difficulty, and he and Bank entered into an Agreement to enable Broadhurst to avoid bankruptcy.

6. Under this Workout Agreement, Broadhurst gave Bank a mortgage on certain real estate hereinafter referred to as "Adams Mill and adjacent property" located in Carroll County, Indiana. . . .

7. Under this Agreement, Broadhurst agreed to seek to dispose of Adams Mill and the adjacent property, and Bank agreed in return to forego exercise of legal rights and remedies. A copy of the Agreement is attached and incorporated by reference. . . .

8. Broadhurst performed all other aspects of his part of the Agreement and engaged in negotiating the sale of Adams Mill and adjacent property to one William Brown.

9. On May 17, 1988, Broadhurst, with Bank's approval (given by Defendant Moenning), signed a written agreement with Brown to sell Brown a part of the adjacent property. . . .

10. In entering this agreement, Broadhurst relied upon Bank's approval of the transaction and agreement to cooperate in the transaction and assist in its execution.

\*　　\*　　\*　　\*　　\*　　\*

13. Bank, through Moenning, first promised, then refused, to finance various percentages of the purchase price agreed to between Brown and Broadhurst.

\*　　\*　　\*　　\*　　\*　　\*

20. Because of Bank's unreliability and changeability and various deceptive acts and practices by Bank via Moenning, Brown became disgusted with the entire transaction, withdrew his offer to purchase the adjacent property, and refused to negotiate further to purchase all or any part of the property.

21. On May 23, 1989, in violation of its promise and in breach of its Agreement with Broadhurst, Bank filed a Complaint for Foreclosure against the Adams Mill property. . . .

22. By reason of Bank and Moenning's actions, Broadhurst was prevented from selling his property at its fair market value and thus prevented from performing his contract with Bank and incurred legal fees and expenses in defending the foreclosure.

23. The conduct of Bank and Moenning was deliberate, oppressive and in bad faith.

WHEREFORE, Plaintiff Broadhurst requests damages from Gainer Bank, N.A., and from Walter P. Moenning in a sum adequate to compensate him for his losses, including actual damages for the lost sale a potential sale to Brown and others, interest, costs, and for punitive damages."

Record, pp. 7–9.

Case II was transferred to Lake County; the parties then agreed to a change of venue to Newton County; a change of judge fol-

lowed, and a special judge was appointed on February 20, 1991. On October 28, 1991, while Case I was pending on appeal, the Case II trial court entered its order granting summary judgment in favor of the Bank and Moenning.[1] The trial court ruled that Broadhurst's claims against the Bank for breach of contract and interference with contractual relations were compulsory counterclaims in Case I. On Broadhurst's claims against Moenning, the trial court ruled that the claims were barred because they were "in the nature of a cross-complaint, which was not plead in the foregoing mortgage foreclosure action." Record, p. 187. The trial court also granted summary judgment in favor of the Bank and Moenning on Broadhurst's claims sounding in malicious prosecution, ruling that they were premature in light of the pending Case I appeal.

Broadhurst's counsel did not receive notice of the trial court's order until August 5, 1992. Broadhurst requested and received an extension of time to file a motion to correct errors, which was filed with the court in September, 1992. Broadhurst's motion to correct errors was denied, and this appeal was initiated.

## I

The first issue Broadhurst presents for our review is whether Ind.Trial Rule 13(A), which provides for compulsory counterclaims, violates Article I, § 20 of the Indiana Constitution as applied in this case. Broadhurst argues, in effect, that because his claims against the Bank and Moenning would be triable by jury but for being required to be asserted as compulsory counterclaims in the Bank's foreclosure action, where there would be no right to trial by jury, T.R. 13(A) unconstitutionally deprives Broadhurst of his right to a trial by jury.

Indiana Trial Rule 13(A) provides, in pertinent part:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transac-

tion or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

T.R. 13(A). The Indiana Constitution, on the other hand, provides: "In all civil cases, the right of trial by jury shall remain inviolate." Ind. Const. art. I, § 20. As noted by this court in *Farmers Bank and Trust Co. v. Ross* (1980), Ind.App., 401 N.E.2d 74, "[t]he phrase, 'all civil cases,' has been strictly construed as referring to all civil cases which were triable by jury at common law.... The result of this construction is bottomed in the historical fact that actions in equity were not tried before a jury, but those in law were." *Id.* at 75. Likewise, it has been held that once equity has the case, a legal counterclaim must also be tried to the court under the umbrella of equity, there being no right to a trial by jury on the counterclaim. *Id.* at 76.

Broadhurst notes that his counterclaims against the Bank and Moenning were triable by jury at common law, whereas the Bank's action for foreclosure was equitable in nature and therefore not triable by jury. Broadhurst argues that if he had brought his claims as compulsory counterclaims in the foreclosure action, the trial court undoubtedly would have denied his request for a trial by jury on his claims and this would have violated his right to a trial by jury under article I, § 20 of the Indiana Constitution.

The Bank and Moenning counter that this question is not appropriately before this court. They argue that if Broadhurst had filed his counterclaims as compulsory counterclaims in Case I and made a timely request for a jury trial, and the request for a jury trial had been denied based on the equitable nature of the foreclosure action, then this issue would have been reviewable in Case I. It is not, they contend, a reviewable issue in the present case. We agree. *See Jensen v. Laudig* (1986), Ind.App., 490 N.E.2d 405, 406; *see also State ex rel. Unem-*

---

1. The trial court's order purports to both grant summary judgment in favor of the Bank and Moenning *and* to dismiss Broadhurst's complaint. Because the trial court considered mate-

rials outside of the pleadings, however, the trial court's order operated as a summary judgment in favor of the defendants. Ind.Trial Rule 12(B)(8).

*ployment Compensation Bd. of Unemployment Compensation Div. v. Burton* (1942), 112 Ind.App. 268, 44 N.E.2d 506, 509 (appeals are not allowed for the purpose of settling abstract questions). This issue is not properly before us in the present appeal.

## II

■ The next issue Broadhurst presents is whether the logical relationship test for determining if a claim is a compulsory counterclaim under T.R. 13(A) is inadequate. As noted above, T.R. 13(A) requires a party to state as a counterclaim any claim the party has against the opposing party which "arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim...." T.R. 13(A). In *MiddelKamp v. Hanewich* (1977), 173 Ind.App. 571, 364 N.E.2d 1024, this court wrote:

"The first test for a compulsory counterclaim is whether it '[arose] out of the transaction or occurrence that is the subject-matter of the opposing party's claim....' The test for compulsoriness is a logical relationship test, as stated by the United States Supreme Court in a case under the former equity rule from which federal rule 13(a) was derived:

' "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon their connection as upon their logical relationship.' *Moore v. N.Y. Cotton Exchange* (1926), 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.E.d. 750, 757....

The term 'transaction or occurrence' is given a broad interpretation by the courts to avoid multiplicity of litigation."

*Middelkamp*, 364 N.E.2d at 1035. In a more recent case discussing the meaning of the phrase "transaction or occurrence," this court observed:

"The courts of this state have held that the phrase 'transaction or occurrence' is to be given a broad definition so as to effectuate the rule's intended purpose of avoiding

multiple lawsuits between the same parties arising from the same event or events.... Consequently, our courts have adopted the position that two causes of action arise from the same transaction or occurrence when there is a logical relationship between them."

*Estate of McCullough v. McCullough* (1986), Ind.App., 492 N.E.2d 1093, 1096, *reh'g denied, trans. denied.* A logical relationship exists when the counterclaim arises from the same "aggregate of operative facts" as the opposing party's claim. *Id.* "This standard best accomplishes the goal of Trial Rule 13(A) by providing a flexible analytical framework." *Id.*

Broadhurst argues that the logical relationship test is an inadequate test because it "provides no ascertainable standard beyond the whim of the trial judge." Appellant's brief, p. 36. Broadhurst asserts: "The existence vel non of a 'logical relationship' depends on the logician. There is no objective standard. This is 'flexibility' to the point of total liquidity." Appellant's brief, p. 42. We disagree.

Broadhurst's argument implies that the logical relationship test is applied in a vacuum. As noted above, the purpose behind the rule is to avoid "multiple lawsuits between the same parties arising from the same event or events." *Estate of McCullough,* 492 N.E.2d at 1096. Thus, the goal of judicial economy provides guidance in the application of the logical relationship test; the particular facts underlying the parties' respective claims provide the requisite context for the application of the test. Furthermore, Broadhurst does not assert that he has been harmed by the logical relationship test's alleged inadequacies. We therefore decline Broadhurst's invitation to abandon the logical relationship test.

## III

■ We next turn to our review of the trial court's entry of summary judgment in favor of the Bank.[2] In our review of a trial

---

2. We note that the Bank and Moenning filed their "Motion to Dismiss and Motion for Summary Judgment" on September 21, 1990, prior to the January 1, 1991 effective date of the designation requirements currently found in Ind.Trial Rule 56(C). While this motion was still pending,

court's entry of summary judgment, we are bound by the same standard as the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434. We do not weigh the evidence, but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mutual Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. This court may affirm the trial court's ruling on a motion for summary judgment even if on grounds different than those reflected in the trial court's order. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 371; *City of Tipton v. Baxter* (1992), Ind.App., 593 N.E.2d 1280, 1282.

■ We first address the issue of whether the trial court erred in entering summary judgment in favor of the Bank on Broadhurst's claims of breach of contract and interference with contract. Broadhurst argues that the trial court erred because his claims against the Bank did not arise out of the same "transaction or occurrence" as the Case I mortgage foreclosure action. He asserts that there is no logical relationship between his Case II claims and the Bank's claims in Case I. We disagree.

In support of its motion for summary judgment, the Bank submitted to the trial court, among many other items, a copy of the Case I trial court's judgment of September 7, 1990. The Case I trial court made findings of fact and conclusions thereon regarding the same debts, mortgages, workout agreement,

obligations on the part of both Broadhurst and the Bank under the workout agreement, the Bank's alleged breach of a promise to provide favorable financing, and the same failed real estate transaction with Brown, all of which form the basis of Broadhurst's complaint in the present action. From a review of the Case I trial court's judgment alone, it is clear that Broadhurst's Case II claims against the Bank arose out of the same "transaction or occurrence," *i.e.*, the workout agreement and parties' conduct thereunder, as in Case I. Despite Broadhurst's contentions to the contrary, the workout agreement controlled the Bank's right of foreclosure in Case I.

Broadhurst cites a number of federal cases and pre-T.R. 13(A) Indiana cases which he asserts demonstrate confusion in the law and conflicting results on the same or similar questions. We do not believe that resort to these cases is necessary, and disagree with Broadhurst's position that the law is so unclear generally that we must reverse the trial court here. As Broadhurst himself concedes, case law supports the trial court's determination. *See Estate of McCullough*, 492 N.E.2d at 1096–97; *Streets v. M.G.I.C. Mortgage Corp.* (1978), 177 Ind.App. 184, 378 N.E.2d 915, 920, *reh'g denied; Middelkamp*, 364 N.E.2d at 1035; *cf. Hayes v. Harris* (1985), Ind.App., 479 N.E.2d 1359, *reh'g denied.* The trial court did not err in entering summary judgment in favor of the Bank on Broadhurst's claims for breach of contract and interference with contract.

Finally, as to the Bank, Broadhurst asserts that his complaint stated a claim for abuse of process. We note that the parties alternately made reference to "abuse of process" and "malicious prosecution" before the trial court, using the phrases interchangeably without distinguishing between the two causes of ac-

---

the case was transferred, a change of venue occurred, and a change of judge occurred, a special judge being appointed on February 20, 1991. The court then set a due date for Broadhurst's response to the motion. Broadhurst filed his memorandum in opposition to the motion for summary judgment on April 9, 1991, along with his designations of genuine issues of material fact and evidentiary material, consistent with the newly effective designation requirements in T.R.

56(C). Thus, the Bank and Moenning were not required to make a specific designation of the materials on which they relied in support of their motion. Broadhurst, on the other hand, was required to designate the materials upon which he relied in opposition to the motion, as well as each material issue of fact and evidence relevant thereto which he believed would preclude summary judgment.

tion. The trial court made no specific ruling as to Broadhurst's purported claim for abuse of process. The trial court did rule that Broadhurst's claims sounding in malicious prosecution were premature in light of the pending appeal in Case I, and Broadhurst does not appeal the entry of summary judgment on that claim. In his appellant's brief and reply brief, however, Broadhurst alleges that the Case I foreclosure action was brought to prevent him from selling his property at fair market value and with the motive of oppressing and injuring him. Broadhurst contends that these improper motives give rise to a claim for abuse of process.

■ Broadhurst correctly notes that, unlike an action for malicious prosecution, an action for abuse of process "does not require proof ... that the action would have terminated in favor of the party asserting abuse of process." *Lindsay v. Jenkins* (1991), Ind. App., 574 N.E.2d 324, 326, *trans. denied.* There are, however, two elements to abuse of process: (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Id.* Otherwise stated, "[a]buse of process requires a finding of misuse or misapplication of process, for an end other than that which it was designed to accomplish." *Tancos v. A.W., Inc.* (1986), Ind.App., 502 N.E.2d 109, 116, *reh'g denied, trans. denied.* Although Broadhurst alleges that the Bank had ulterior motives in Case I, he has failed to allege or point to any evidence of a use of process not proper in the regular course of the proceeding. It is undisputed that the Bank had an interest as mortgagee in Broadhurst's property and that the foreclosure action was filed after Broadhurst failed to sell the property as required by the workout agreement. The Bank's use of process for the purpose of filing suit to foreclose on its mortgage was a legitimate use of the judicial system. *See Tancos,* 502 N.E.2d at 116. "A regular and legitimate use of process, though with an ulterior motive or bad intention is not a malicious abuse of process." *Brown v. Robertson* (1950), 120 Ind.App. 434, 92 N.E.2d 856, 858. Broadhurst has no claim against the Bank for abuse of process.

Accordingly, the trial court's entry of summary judgment in favor of the Bank is affirmed.

## IV

■ We next turn to the question of whether the trial court erred in entering summary judgment in favor of Moenning. The trial court granted summary judgment in favor of Moenning on the basis that part of Broadhurst's complaint against Moenning was "in the nature of a cross-complaint, which was not plead in the foregoing mortgage foreclosure action." Record, p. 187. Broadhurst argues that his claims against Moenning should not be barred in this case because Moenning was not a party to the foreclosure action. Broadhurst correctly notes that T.R. 13(A) applies only to opposing parties. Broadhurst further asserts that the trial court erred because even if his claims against Moenning constituted "cross-claims" against a "co-party" (which they do not), under Ind.Trial Rule 13(G) the bringing of such claims is permissive, not compulsory. T.R. 13(G); *Consolidated Rail Corp. v. Travelers Ins. Companies* (1984), Ind., 466 N.E.2d 709, 713–14. Moenning concedes that the basis for the trial court's determination regarding the claims against him was erroneous. He argues for affirmance, however, based on a number of grounds other than those found in the trial court's order.

Moenning argues, as he argued before the trial court, that Broadhurst has no claims against him personally because he was acting solely in a representative capacity. To this Broadhurst counters that his claims sound in tort, and cites the general proposition that a corporate officer may be held personally liable for his tortious conduct even if the tortious acts were committed while acting as an agent for the corporation. *See, e.g., Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, 976, *reh'g denied, trans. denied; Roake v. Christensen* (1988), Ind.App., 528 N.E.2d 789, 791–92. Broadhurst contends that Moenning can be held personally liable because his complaint states claims against Moenning for the tort of abuse of process, tortious breach of contract, and tortious interference with contract.

First, we note that Broadhurst has no claim for abuse of process against Moenning for the same reasons that he has no claim for abuse of process against the Bank, as discussed in section III of this decision, *supra*.

 Second, Broadhurst asserts that his complaint states a claim for tortious breach of contract for which Moenning can be held personally liable. Indiana, however, does not recognize a separate cause of action for tortious breach of contract. *Comfax Corp. v. North American Van Lines, Inc.* (1992), Ind. App., 587 N.E.2d 118, 123.

In Indiana, a suit for breach of contract may be brought only against "a party to the contract or against those in privity with the party." *Implement Service, Inc. v. Tecumseh Products Co.* (S.D.Ind.1989), 726 F.Supp. 1171 (citing *Evansville & S.I. Traction Co. v. Evansville Belt Ry. Co.* (1909), 44 Ind.App. 155, 162–63, 87 N.E. 21, 23–24; and *Gonzales v. Kil Nam Chun* (1984), Ind.App., 465 N.E.2d 727). The parties to a particular contract normally may be identified as a matter of law from the terms of the contract, absent some sort of ambiguity. *Id.* It is clear from the terms of the workout agreement that Moenning was not a party to the contract at issue in this case. Record, pp. 54–59. Consequently, Broadhurst cannot recover from Moenning based on breach of the workout agreement.

Finally, Broadhurst contends that he has a claim against Moenning for tortious interference with contract. Moenning cites *Kiyose v. Trustees of Indiana University* (1975), 166 Ind.App. 34, 333 N.E.2d 886 for the proposition that he may not be held liable for tortious interference with contract because Broadhurst has alleged only the commission of acts falling within his scope of duties as an agent of the Bank. *Kiyose*, however, was a case involving allegations of an agent's tortious interference with the contract of his principal. *Id.* 333 N.E.2d at 891. In the present case, Broadhurst alleges Moenning tortiously interfered with Broadhurst's contract with Brown; thus, *Kiyose* is not dispositive here.

Next, Moenning sets forth the elements of tortious interference with contract: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and, (5) damages resulting from defendant's wrongful inducement of the breach. Appellees' brief at pp. 27–28 (citing *Biggs v. Marsh* (1983), Ind. App., 446 N.E.2d 977, 983, *reh'g denied*). Moenning then presents arguments regarding the lack of evidence supporting each of these elements of Broadhurst's claim, and urges us to affirm based on these arguments. Although Moenning ultimately may be entitled to summary judgment on this claim, the issue of Moenning's potential liability for tortious interference with contract was not presented to the trial court and the record of evidentiary materials in the present appeal is insufficient for us to affirm the entry of summary judgment on the alternate ground proposed by Moenning.

Accordingly, the trial court's entry of summary judgment in favor of the Bank is affirmed, and the trial court's entry of summary judgment in favor of Moenning is affirmed in part and reversed in part.

**AFFIRMED IN PART AND REVERSED IN PART.**

FRIEDLANDER and RUCKER, JJ., concur.