**NEW ALBANY RESIDENTIAL, INC., Appellant–Plaintiff,**

v.

**Karen HUPP, Appellee–Defendant.**

**No. 22A01–0703–CV–127.**

Court of Appeals of Indiana.

Aug. 22, 2007.

New Albany Residential, Inc., New Albany, IN, Appellant pro se.

Scott L. Tyler, Tricia Kirkby Hofmann, Ward, Tyler & Scott, LLC, New Albany, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff New Albany Residential, Inc. (New Albany) d/b/a Re/Max Associates of New Albany (Re/Max), appeals the trial court's order granting appellee-defendant Karen Hupp's motion for summary judgment on New Albany's complaint against Hupp. In particular, New Albany argues that the trial court erroneously concluded that New Albany's claim against Hupp is barred because it should have been raised as a compulsory counterclaim in separate litigation instituted by Hupp. Finding that because New Albany was not a party to the separate litigation and that, consequently, its claim is not a compulsory counterclaim, we reverse the judgment of the trial court and remand for further proceedings.

## FACTS

Southeast Realty, Inc. (Southeast) d/b/a Re/Max, was owned by Charles L. Martin and J. Michael Poole. In June 1999, Martin formed New Albany. In July 1999, Southeast's Re/Max franchise was terminated because Poole was convicted of stealing over $150,000 from Southeast and was incarcerated as a result. At that time, the Re/Max franchise was transferred to New Albany, which began doing business as Re/Max.

In 1999, when the Re/Max franchise was still attached to Southeast, Hupp entered into a Manager Agreement with Re/Max. Southeast was not a party to that agreement. Hupp began working for Re/Max in March 1999. After the Re/Max franchise was transferred from Southeast to New Albany, Hupp continued to work for Re/Max in the same capacity. No new Manager Agreement was ever executed.

On February 6, 2002, Hupp filed a breach of contract action against Martin and Poole, alleging that she had neither been paid the salary nor received the benefits to which she was entitled pursuant to the Manager Agreement. She subsequently amended her complaint to add Southeast d/b/a Re/Max as a defendant based on Martin's argument that Southeast was an indispensable party to the action. Martin did not attempt to join New Albany as a party to the litigation. None of the defendants filed a counterclaim against Hupp.

Pursuant to a clause in the Manager Agreement, Hupp's claim was submitted to binding arbitration. On April 20, 2006, the arbitrator entered an award in Hupp's favor. Southeast and Martin asked the arbitrator to modify the award by apportioning part of it to Southeast and the remainder to New Albany. The arbitrator rejected the request, after which Martin and Southeast made a similar request of the trial court. The court denied that motion and affirmed the award in its entirety.

On September 8, 2006, New Albany filed a new and separate complaint against Hupp, arguing that she had breached the Manager Agreement in a number of ways and seeking damages stemming from the alleged breach. On November 22, 2006, Hupp filed a motion to dismiss and/or for summary judgment on New Albany's complaint, arguing, among other things, that New Albany's claim should have been

raised as a compulsory counterclaim in Hupp's lawsuit against Martin, Poole, and Southeast. On February 12, 2007, the trial court granted summary judgment in favor of Hupp, finding, among other things, as follows:

2. The two causes of action ... share a logical relationship and arise from the same transaction or occurrence.

3. The counterclaim was mature at the time [New Albany] was required to file its responsive pleading.

4. The counterclaim did not require the presence of a third party over which the Court did not have jurisdiction.

5. The merits of the final binding arbitration award were not challenged during the statutory time frame.

6. If a party fails to raise a compulsory counterclaim in its responsive pleadings, that claim will be barred.

7. A party cannot raise a compulsory counterclaim in a separate action. . . .

\* \* \*

9. [New Albany] had the opportunity to raise a counterclaim in the name of [Southeast] or [Re/Max] in the underlying suit ... but failed to do so.

10. [New Albany's] Verified Complaint is an untimely, compulsory counterclaim which is barred.

Appellant's App. p. 2–3 (citations omitted). New Albany now appeals.

## DISCUSSION AND DECISION
### I. Standard of Review

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

### II. Compulsory Counterclaims

Indiana Trial Rule 13(A) governs compulsory counterclaims and provides as follows:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:

(1) at the time the action was commenced the claim was the subject of another pending action; or

(2) the opposing party brought suit upon his claim by attachment or other process by which the court

did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this rule.

The rule does not define the word "pleader." It has been established, however, that Rule 13(A) "applies only to opposing *parties.*" *Broadhurst v. Moenning*, 633 N.E.2d 326, 333 (Ind.Ct.App.1994) (emphasis added).

In *Broadhurst*, a bank filed a foreclosure action on a mill owned by Broadhurst. The trial court found that the bank had unclean hands and was not entitled to foreclosure, but on appeal, a panel of this court reversed the trial court's judgment, finding that the bank was entitled to foreclosure. Subsequently, Broadhurst filed a separate complaint against the bank and the bank's vice president, Moenning, as an individual. Among other things, Broadhurst alleged that the bank and Moenning had breached a contract with him and that their breach ultimately led to the foreclosure action. The trial court granted summary judgment in Moenning's favor because Broadhurst's claims against him were compulsory counterclaims that were not pleaded in the foreclosure action. *Id.* at 330.[1] This court agreed with Broadhurst—and, indeed, with Moenning, who conceded the issue—that the trial court erroneously dismissed his claims on that basis. Inasmuch as Moenning was not a party to the foreclosure action, Trial Rule 13(A) did not apply. *Id.* at 333.[2]

Hupp directs our attention to *Ratcliff v. Citizens Bank of Western Indiana* in support of her argument that the trial court properly dismissed New Albany's claims. 768 N.E.2d 964 (Ind.Ct.App.2002). The Ratcliffs sought financing through a bank and were assisted by the bank's president, Fehrenbach. Ultimately, after apparently receiving some bad advice from Fehrenbach, the Ratcliffs defaulted on their loans and the bank sued them. During the receivership, the Ratcliffs sued the bank and Fehrenbach. The trial court granted the bank's motion to dismiss, finding, among other things, that the Ratcliffs' claims were compulsory counterclaims that should have been filed during the foreclosure and receivership proceedings. On appeal, a panel of this court acknowledged the holding in *Broadhurst* but found that it did not apply:

> The Ratcliffs argue alternatively that even if their claims against the Bank were compulsory counterclaims, their claims against Fehrenbach, individually, must survive because he was not named as a party in the foreclosure action. But Trial Rule 13(A) does not limit compulsory counterclaims to only those individuals named in the original complaint; rather, a party is required to file a compulsory counterclaim that arises from the same transaction or occurrence against third parties over whom the court *can acquire jurisdiction.* The Ratcliffs do not demonstrate that the trial court could not have acquired jurisdiction over Fehrenbach had the Ratcliffs sought to join him as a party.

*Id.* at 969 (emphasis in original).

*Ratcliff* is inapposite to the situation we confront herein. The Ratcliffs, who

---

1. Although the trial court called the claims "cross-complaint[s]," it is apparent that it merely mislabeled them and concluded that they were, instead, compulsory counterclaims. *Id.* at 330. This court implicitly drew the same conclusion, inasmuch as it began its analysis with Trial Rule 13(A).

2. Ultimately, we partially affirmed the trial court's dismissal of Broadhurst's claims against Moenning on other grounds and partially reversed, remanding Broadhurst's claim for tortious interference with contract against Moenning for trial. *Id.* at 333.

sought to file compulsory counterclaims in a later action, *were parties to the original action.* They should have sought to join Fehrenbach, who was not a party to the original action, so that they could raise their claims against him therein. Fehrenbach—the defendant in the subsequent action—need not have been a party to the original litigation to be joined thereto so long as the trial court could have acquired jurisdiction over him.

■ Here, New Albany, which seeks to assert a claim against Hupp, was *not* a party to the original action.[3] *See* Appellee's Br. p. 11 (conceding that "[a]dmittedly, [New Albany] was not named as a party in" Hupp's original lawsuit). It defies logic to conclude that New Albany could have filed a *counter*claim when it faced no original claim to begin with—there was no claim to counter. Indeed, Hupp's own brief implicitly lends support to that conclusion: "[i]f a party fails to raise a compulsory counterclaim *in its responsive pleading,* that claim will be forever barred." Appellee's Br. p. 16 (emphasis added). New Albany could not have filed a responsive pleading because there was no pleading to which it had to respond. New Albany did not take part in Hupp's original lawsuit; consequently, it could not have filed a claim against her therein.

It is true, as Hupp suggests, that New Albany could have joined—or been joined to—the original action as a party. Hupp could have amended her complaint to add New Albany as a defendant. New Albany could have filed a petition to intervene as of right or permissively. Ind. Trial Rule 24. Martin or Southeast could have joined New Albany as a third-party defendant by filing an indemnification claim against it. Ind. Trial Rule 14(A). Furthermore, Martin or Southeast could have sought to join New Albany as an indispensable party. Ind. Trial Rule 19. Finally, Martin or Southeast could have sought to join New Albany as a defendant based on the fact that Hupp's claims arose "out of[ ] the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Ind. Trial Rule 20. As Hupp concedes, however, "such joinder was not mandatory under any of the rules...." Appellee's Br. p. 13. Inasmuch as New Albany was not required to have joined the original litigation—nor was any party to that lawsuit required to join New Albany thereto—we cannot fault it for its failure to do so.

In sum, we find that New Albany was not a party to Hupp's original lawsuit. We also find that, while it could have joined or been joined as a party to that lawsuit, that course of action was not required. Consequently, New Albany's claim against Hupp is not a compulsory counterclaim that should—or could—have been raised in the original litigation. We find that the trial court erroneously dismissed New Albany's complaint on that basis.

The judgment of the trial court is reversed and remanded for further proceedings.

CRONE, J., concurs.

FRIEDLANDER, J., dissents with opinion.

---

**3.** We acknowledge, as the dissent points out, that there is a close identity between Martin, Re/Max, and New Albany. To provide guidance to litigants, however, we must draw a line between situations in which a claim is compulsory and those in which it is not. Saying that a "close identity" suffices to make a claim compulsory is an untenably imprecise rule—how close is close enough? We conclude, therefore, that the clearer, more practical course of action is to hold that if an entity was not actually a party to the original lawsuit—nor required to join or be joined thereto—then its claim against one of the litigants to that lawsuit is not a compulsory counterclaim.

FRIEDLANDER, Judge, dissenting.

I believe New Albany Residential's (New Albany's) claims were compulsory counterclaims and should have been raised in Hupp's prior lawsuit. Therefore, I respectfully dissent from the reversal of summary judgment in favor of Hupp.

The Majority's conclusion that the claims against New Albany were not compulsory counterclaims hinges largely on the fact that New Albany was not a party to the original lawsuit. As I understand it, the Majority concludes that New Albany's absence as a party in the prior proceeding forecloses any possibility that it should have counterclaimed. This, because it could not have responded when it was not served with a claim in the first place. While that logic holds a certain appeal, I believe it is inapplicable here at least in part because of the close identity between Martin, Re/Max, and New Albany.

To review, Hupp had filed a breach of contract action against Martin and Poole, the sole shareholders of Southeast Realty d/b/a Re/Max (Southeast). When Poole was convicted of criminal misconduct, Martin formed New Albany, and Re/Max was transferred from Southeast to New Albany. Hupp's lawsuit centered upon her rights under the Manager Agreement she signed with Re/Max before Re/Max was transferred from Southeast to New Albany. The close identity between Martin and his companies, i.e., Southeast and New Albany, and indeed between the companies themselves, renders untenable any suggestion that New Albany did not counterclaim because it was not aware of Hupp's lawsuit and its potential rights and liabilities thereunder. Yet, that claim lies close to the heart of New Albany's claim on appeal, e.g.,

> Moreover, [New Albany], at the time of the First Action and subsequent arbitration were pending was not even aware it had a claim against Hupp for the Manager Agreement. Only after Hupp admitted that the Agreement continued and the arbitrator ruled accordingly did Martin, the owner of [New Albany], realized [New Albany] had a claim against Hupp for breach of the Agreement.

*Appellant's Brief* at 9. I reiterate that Martin, the sole shareholder for New Albany, also, along with Poole, formed Southeast. Moreover, the Manager Agreement that was the focal point of Hupp's lawsuit was between her and Re/Max, which was owned first by Southeast, and then by New Albany.

Finally, and importantly, I cannot agree with the Majority's rejection of *Ratcliff v. Citizens Bank of Western Indiana*, 768 N.E.2d 964 (Ind.Ct.App.2002), *trans. denied*, summarized in the Majority opinion, as applicable to this situation. There, the Ratcliffs contended that their claims against Fehrenbach were not compulsory counterclaims because he was not a party in the earlier foreclosure action. The *Ratcliff* panel rejected that claim upon grounds that Fehrenbach could have been joined in the foreclosure action and the trial court could thereby have acquired jurisdiction over him. So it is in the instant case with respect to New Albany, which could have been joined in Hupp's action.

For the foregoing reasons, I believe New Albany's claim was a compulsory counterclaim that should have been raised in Hupp's action, and on that basis I would affirm the trial court's grant of summary judgment in favor of Hupp.