Lawrence T. NEWMAN and Beverly R. Newman, Plaintiffs–Appellants,

v.

STATE OF INDIANA, et al., Defendants–Appellees.

No. 97–1554.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 3, 1997.

Decided Nov. 19, 1997.

William E. Daily (argued), Danville, IN, for Plaintiffs–Appellants.

Jon B. Laramore (argued), Jeffrey A. Modisett, Office of the Attorney General, Indianapolis, IN, for Defendants–Appellees State of Indiana, Evan Bayh.

Michael A. Wilkins, Ice, Miller, Donadio & Ryan, Indianapolis, IN, for Defendant–Appellee Children's Bureau of Indianapolis, Inc.

John T. Roy, Stephenson, Daly, Morow & Kurnik, Indianapolis, IN, for Defendant–Appellee Jack L. Cottey.

Niccolo N. Donzella, Shapiro & Olander, Baltimore, MD, Wendy J. Greenberg, Sandra Barnes (argued), Office of the Attorney General, Department of Human Resources, Baltimore, MD, for Defendant–Appellee State of Maryland.

Niccolo N. Donzella, Barron L. Stroud, Jr., Shapiro & Olander, Baltimore, MD, for Defendant–Appellee Worcester County, Maryland, Worcester County Sheriff's Department, Dan McAllister, Jim Stant.

N. Kent Smith, Hall, Render, Killian, Heath & Lyman, Indianapolis, IN, for Defendant–Appellee Kurt A. Moehle.

Peter A. Schroeder, Ellen W. Quigley, Norris, Choplin & Johnson, Indianapolis, IN, for Defendant–Appellee Michael Bishop.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

POSNER, Chief Judge.

The subject of domestic relations, including adoptions, is the primary responsibility of the state courts, administering state law, rather than of the federal courts. *Ankenbrandt v. Richards*, 504 U.S. 689, 703–04, 112 S.Ct. 2206, 2214–15, 119 L.Ed.2d 468 (1992); *Ex parte Burrus*, 136 U.S. 586, 593, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890); *T.W. v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997); *Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir.1982); *Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077 (5th Cir.1990). Modern federal constitutional law is so encompassing, however, that parties to domestic relations disputes are sometimes tempted to try to transform a routine domestic relations dispute into a federal case by clothing it in a federal constitutional garb, unmindful of the subtle doctrines that have evolved to prevent that kind of federal power grab. That is what has happened here. A married couple in Indiana, disappointed in their efforts to adopt a Maryland child, have brought a hopeless suit against 54 named, and many unnamed, agencies, officials, and private persons in Indiana and Maryland. The complaint, most of which the district court dismissed on the pleadings (certifying these rulings for immediate appeal under Fed.R.Civ.P. 54(b)), alleges in great detail a far-reaching and implausible conspiracy to prevent the Newmans, by reason of their being Jewish, from adopting Jewish (or, we suppose, any other) children.

Here is the story told in the complaint. Back in 1992 the Newmans had been declared eligible to adopt a child, but, because of their religion, the Indiana defendants discouraged them from trying actually to adopt any child. The Newmans managed to locate a trio of Jewish siblings in Maryland who were in foster care—two seven-year-old twin boys and their three-year-old sister, Laura. The social service department of Worcester County, Maryland approved the Newmans as adoptive parents and they were permitted to and did take the three kids back with them to Indiana, although there was as yet no formal adoption. Soon, however, the Newmans observed sexually aggressive and violent behavior on the part of the two boys, as well as bruises on Laura which suggested that she had been subjected to physical abuse. So the Newmans returned to the Worcester County agency first one of the boys and then, when the other's behavior didn't improve in his twin's absence, the other, retaining Laura. The agency says that it didn't want the trio separated, see *In re Adoption of L.C.*, 650 N.E.2d 726, 730 (Ind. App.1995); the Newmans, whose version we accept for purposes of this appeal, claim that the agency was motivated by anti-Semitism—that the Maryland defendants joined with the Indiana defendants "in a course of intentional and malicious conduct, the purpose of which was to abort the adoption of Laura by the Newmans and return Laura to Maryland."

The Newmans defied the defendants and in March of 1994 Worcester County officials sought and obtained in a Maryland court an ex parte order directing the Newmans to return Laura to Maryland. The officials took the order to the probate court in Indianapolis, seeking enforcement. The case was assigned to Judge Deiter, one of the defendants. The litigation was timed to begin just hours before the beginning of Passover, which prevented the Newmans from preparing for the hearing before Judge Deiter until the day before the hearing was held. The

judge issued an order confirming the Maryland order. The Newmans appealed, and the Indiana intermediate appellate court affirmed. *In re L.C.*, 659 N.E.2d 593 (Ind.App. 1995). Simultaneously with these proceedings, the Newmans submitted a petition to the same judge to adopt Laura. The petition was denied in June, and, again, the intermediate appellate court affirmed. *In re Adoption of L.C., supra.* The Newmans unsuccessfully sought review in both cases by the Indiana Supreme Court and by the U.S. Supreme Court.

In May of 1994, after Judge Deiter had confirmed the Maryland order to return Laura to that state, Indiana officials (defendants all) arrived at the Newmans' home to take custody of the child. The Newmans wanted an opportunity for a further hearing before the judge to present (among other things) evidence that it would be contrary to Laura's best interests to remove her from their home. The judge agreed to conduct an "emergency best interests hearing" in his chambers that night. At the end of the hearing, the judge told the Newmans that he was ordering the sheriff to remove Laura from their home and that they could not leave his chambers until this had been accomplished. They were permitted to leave an hour and a half after the judge told them to stay.

In October, the Newmans visited the foster home in Maryland in which Laura had been placed after her removal from their home and observed evidence of abuse and neglect of the child. They went to the Worcester County social services agency to file a report of what they had seen. The agency refused to accept the report. Instead, the director called the sheriff, who when he arrived told the Newmans that they would have to leave because they were interfering with the work of the office. So ends the Newmans' adoption saga as narrated in the 49–page complaint.

■ The district judge, understandably confused and perhaps exasperated by the plethora of claims and defendants, issued a confusing order dismissing some of the claims and defendants and refusing to dismiss others. Rule 54(b) of the Federal Rules of Civil Procedure authorizes the district court to enter a final, and therefore immediately appealable, judgment disposing of fewer than all parties or fewer than all claims. Insofar as the judge dismissed all the claims against some of the parties, there is no problem. Insofar as he dismissed some of the claims against some of the parties, so that other claims against those parties remain pending in the district court, the entry of judgments under Rule 54(b) may have been improper. For he failed to indicate—and it is unclear from the record—whether the retained claims are *separate* from the dismissed ones, in the practical sense that there is minimal factual overlap. *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1162–63 (7th Cir.1997); *NAACP v. American Family Mutual Ins. Co.*, 978 F.2d 287, 291–93 (7th Cir.1992); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 580 (1st Cir.1994).

Rather than remand for clarification and thus prolong an obviously meritless case, we shall indicate our view of the merits, affirm the judgment insofar as it dismisses all claims against a particular defendant (so that there is no question of the appealability of the dismissal), and vacate the remainder of the judge's order and remand for further proceedings consistent with our opinion. We warn the Newmans and their counsel that continued persistence in this quixotic litigation will invite the imposition of sanctions. We note in this connection that Mr. Newman is himself a lawyer.

■ It is important to be clear about the scope of the suit. It is not brought on behalf of Laura. The Newmans do not purport to sue as her next friend or in any other representative capacity. The complaint is replete with allegations of abuse and neglect of Laura, but these allegations are irrelevant, since she is not a party and the Newmans do not claim that the abuse and neglect worked an injury to them for which they can obtain damages. Furthermore, the Newmans are not seeking to adopt or otherwise obtain custody of Laura. If that were the relief sought by the suit, the suit would be barred by the *Rooker–Feldman* doctrine, *T.W. v. Brophy, supra*, 124 F.3d at 898; *Campbell v.*

*Greisberger*, 80 F.3d 703, 707 (2d Cir.1996); *Guarino v. Larsen*, 11 F.3d 1151, 1156–57 (3d Cir.1993), as well as by res judicata. The Newmans lost both the suit brought by some of the defendants in the present case to have Laura returned to Maryland and the Newmans' own suit to adopt her. If the Newmans didn't like the results of those suits their only remedy, which they pursued to defeat, was to ask for review by the Indiana Supreme Court or the U.S. Supreme Court. We have no jurisdiction to review decisions by the Indiana courts.

■ The only relief sought is an award of damages, primarily for religious discrimination and violations of due process, that are claimed to have frustrated the Newmans' desire to adopt Laura, and secondarily for the temporary deprivation of their liberty when Judge Deiter told them to remain in his chambers until Laura was removed from their home. Another claim against Judge Deiter—that he failed to pursue the Newmans' charges that Laura was being abused—is, as the district judge correctly held, barred by the doctrine of absolute immunity, for it is plain that the judge was acting within the scope of his judicial function in declining to pursue the matter. *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam). (Two other claims against the judge were properly dismissed under the *Rooker–Feldman* doctrine.) Curiously, the district judge declined to apply the doctrine of absolute immunity to Judge Deiter's "detention" of the Newmans and so refused to dismiss him as a defendant; more curiously still, Judge Deiter has not appealed this determination.

■ Belatedly and erroneously, the State of Indiana—arguing we suppose on Judge Deiter's behalf, since the defense of absolute immunity is personal to the judge, *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993), and the State is protected by the Eleventh Amendment from a suit based on the judge's actions— contends that we can reverse the denial of absolute immunity without the judge's having filed a cross-appeal from the order refusing to dismiss him from the suit. We cannot. The filing of a cross-appeal is a jurisdictional prerequisite to our reversing any part of a district court's order. *Young Radiator Co. v. Celotex Corp.*, 881 F.2d 1408, 1415–17 (7th Cir.1989); see also *Chowaniec v. Arlington Park Race Track, Ltd.*, 934 F.2d 128, 130–31 (7th Cir.1991); *Rollins v. Metropolitan Life Ins. Co.*, 912 F.2d 911, 917 (7th Cir.1990).

■ But we may note in passing that in detaining the Newmans the judge was acting in his judicial capacity in a matter that was within at least the outer bounds of his jurisdiction; no more is required for the doctrine to apply. *Mireles v. Waco, supra*; *Stump v. Sparkman*, 435 U.S. 349, 360–63, 98 S.Ct. 1099, 1106–08, 55 L.Ed.2d 331 (1978); *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997); *Tucker v. Outwater*, 118 F.3d 930, 933–34 (2d Cir.1997). Had Judge Deiter hit Mr. Newman over the head with a hammer, or for that matter fired his own secretary because of her religion, he would not have been acting in his judicial capacity and he would therefore not enjoy absolute immunity from a suit for damages under the Constitution. *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988); *McMillan v. Svetanoff*, 793 F.2d 149 (7th Cir.1986); *Duffy v. Wolle*, 123 F.3d 1026, 1034 (8th Cir.1997); *Bryant v. O'Connor*, 848 F.2d 1064 (10th Cir.1988). We are far from such a case. Given the ever-present potential for violence in domestic-relations situations, Judge Deiter would have been acting well within the scope of a domestic-relations judge's judicial function had he enjoined the Newmans from returning home until Laura was removed. Ind. R. Tr. Pro. 65. But as it was midnight when the hearing was held— and the Newmans do not complain about the hour, for it was an accommodation to them, although they complain about the day, another Jewish holiday—compliance with the usual formalities attendant upon the issuance of an injunction would not have been practicable. So the judge just told them to stay put. The informality of the proceeding did not destroy the immunity, as is clear from *Mireles v. Waco, supra*, a factually similar case in which the Supreme Court reversed a denial of absolute immunity.

■ We add unnecessarily that the Newmans have not suggested a more sensible course that the judge might have followed. If he had done nothing and violence had ensued, he would have merited the blame of the community; and it is to spare judges from shrinking from doing their duty out of fear of being sued that the doctrine of absolute judicial immunity was devised. It is irrelevant that the judge may have erred or that he may have had an improper motive. (The Newmans allege that he made a disparaging remark about Jewish holidays.) Immunity washes out errors, and absolute immunity washes out bad motives.

■ Besides Judge Deiter, the Newmans charge the Marion County (Indianapolis) sheriff's office with liability for their detention. This charge founders on the absence of any indication of a policy or custom of the office that resulted in the detention; and the "policy or custom" requirement of the *Monell* decision, interpreting 42 U.S.C. § 1983, may not be avoided by the facile expedient attempted by the Newmans of simply omitting any reference to that statute and suing directly under the Constitution. *Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704 (9th Cir.1992) (per curiam); *Tarpley v. Greene*, 684 F.2d 1, 9–11 (D.C.Cir.1982); *Turpin v. Mailet*, 591 F.2d 426 (2d Cir.1979) (en banc) (per curiam).

■ So far as the claims of religious discrimination and denial of due process are concerned, we can imagine the Newmans' arguing simply that being subjected (as they claim to have been) to an anti-Semitic plot, garnished with procedural irregularities, that embraced almost the whole officialdom of two states, up to and including the Governor of Indiana, caused them emotional distress for which they can be compensated by receiving an award of damages. Their argument is more intricate. It is that the defendants' machinations caused them emotional distress and related harm *by preventing them from keeping Laura*. Their alleged right to keep her is the essential link between the defendants' misconduct and the damages caused. But that was the claim of right litigated adversely to them in the Indiana suits. Relitigation is barred by *Rooker–Feldman*, and

also by res judicata. That most of the 54 defendants in the present suit were not parties to the previous suits is irrelevant. Nonparties are usually, and here would surely be, allowed to use collateral estoppel defensively, *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Charles Koen & Associates v. City of Cairo*, 909 F.2d 992, 999–1000 (7th Cir.1990); *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir.1996), and thus plead the defeat of the Newmans' claim, fully litigated in the Indiana court system, as a defense to the present suit. But the deeper problem is the *Rooker–Feldman* doctrine, which cannot be gotten around by changing the *dramatis personae*. The premise of a suit to obtain damages for wrongful interference with the Newmans' keeping Laura is that the decisions by the Indiana courts were incorrect. We could not give the Newmans the relief they seek without in effect reviewing and reversing the Indiana courts.

■ There is also a claim that the Worcester County (and some of the other Maryland) defendants violated the Newmans' constitutional rights by preventing them from filing their report on Laura's neglect and abuse with the social service agency and by shooing them off the premises. (Some of the Indiana defendants are charged with similar wrongdoing—failing to respond to the Newmans' complaints about the neglect and abuse of Laura. Separate discussion of this charge is not necessary.) They were not arrested, and the Constitution does not create a right to insist on disturbing government workers. We can imagine a situation in which the refusal of a government agency to permit the filing with it of a report critical of the agency's operations might be found to be an infringement of the right to petition for redress of grievances. Cf. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972); *Gillard v. Norris*, 857 F.2d 1095, 1101 (6th Cir.1988) (per curiam); *Cate v. Oldham*, 450 So.2d 224, 226 (Fla. 1984). But the circumstances would have to be extraordinary. Otherwise we would be infringing the Constitution every time we

refused to permit the filing of a petition for rehearing that failed to comply with our rules. Cf. *Minnesota State Board v. Knight*, 465 U.S. 271, 283, 104 S.Ct. 1058, 1065, 79 L.Ed.2d 299 (1984); *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979) (per curiam); *San Filippo v. Bongiovanni*, 30 F.3d 424, 439 (3d Cir.1994). The defendants in this part of the suit, however—though only those who are parties to the appeal, since some of the charges remain pending in the district court against other defendants—are in any event protected by sovereign immunity, absolute judicial immunity, *Monell*, want of personal jurisdiction, or a combination of these defenses.

And last, the Worcester County social service agency and defendant Raymond Jarvis are protected by sovereign immunity and want of personal jurisdiction, respectively, against the plaintiffs' claims relating to the alleged release of confidential information about them by these defendants.

The case is thoroughly without merit, but for the reasons indicated earlier we are constrained to affirm only in part, and to vacate and remand in part.