INTERNATIONAL MEDICAL GROUP, INC., An Indiana Corporation, Sirius International Insurance Corporation (publ), a Foreign Corporation, Plaintiffs,

v.

AMERICAN ARBITRATION ASSOCIA-TION, Janella Brown, John Germani, Juan J. Rodriguez, Hilda Piloto, Rod-riguez & Machado Pa, Ogdon, Michael, Defendants.

No. IP00–1020–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

May 25, 2001.

F. Jonathan Zusy, Indianapolis, IN, for plaintiffs.

Geoffrey Slaughter, Sommer & Barnard, Indianapolis, IN, William P. Wooden, Wooden & McLaughlin, Indianapolis, IN, for defendants.

## ENTRY GRANTING DEFENDANTS' MOTION TO DISMISS

BARKER, District Judge.

*Procedural Background*

Plaintiffs, International Medical Group, Inc. ("IMG") and Sirius International In-

surance Corporation ("Sirius"), filed suit in Indiana state court requesting that the court issue an ex parte temporary restraining order ("TRO") with regard to an arbitration proceeding entitled *Michael D. Ogdon, Claimant v. International Medical Group, Inc., Respondent;* American Arbitration Association Case No. 32–193–00084–00 (the "Arbitration Proceeding"). Plaintiffs sought preliminary and permanent injunctive relief to prevent the Defendants, American Arbitration Association ("AAA"), Janella Brown ("Brown"), John Germani ("Germani") (collectively the "AAA Defendants"), Juan J. Rodriguez ("Rodriguez"), Hilda Piloto ("Piloto"), Rodriguez & Machado, P.A. ("R & M"), and Michael Ogdon ("Ogdon") (collectively the "Non–AAA Defendants"), from proceeding with the Arbitration Proceeding, requested declaratory relief with respect to the Arbitration Proceeding and the insurance policy at issue herein, and alleged abuse of process, malicious prosecution and bad faith arbitration. After the state court granted Plaintiffs' requests for preliminary injunctive relief, the action was removed to federal court.[1]

We now consider the AAA Defendants' motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.[2] Specifically, the Defendants allege that there is no personal jurisdiction over Brown and Germani and that jurisdiction is lacking over the AAA because it is an unnecessary defendant, whose presence is tangential to plaintiffs' claims for relief. Furthermore,

1. Plaintiffs' motion to remand the matter to state court has been denied.

2. All claims brought by Sirius against the AAA Defendants were dismissed with prejudice on July 18, 2000. Thus, the motion before the court concerns only the claims brought by IMG against the AAA Defendants.

they contend that the AAA Defendants enjoy arbitral immunity against the claims raised in the complaint, but that even if such immunity does not exist, the complaint lacks the factual basis necessary to support the three substantive claims asserted. For the reasons explicated below, we *GRANT* the AAA Defendants' motion to dismiss in its entirety.

## Factual Background

### A. The Insurance Policy

Defendant, Michael Ogdon ("Ogdon") (a citizen of Great Britain and an alien admitted to the United States for permanent residence, residing in Florida), purchased a global health insurance policy on or about November 14, 1998, issued by Plaintiff, Sirius (a Swedish Corporation, with offices in Stockholm, Sweden, and London, England), and designating Plaintiff, IMG (an Indiana corporation, with offices in Indianapolis), as the policy administrator and general underwriter. *See* Compl. in *Int'l Med. Group, Inc. v. American Arbitration Ass'n,* No. 49D02–0005–CP–736, Marion County, Indiana Superior Court ("State Complaint") ¶¶ 13, 14; *id.,* Exs. A, Global Medical Insurance contract, signed by Michael Ogdon, and dated Sept. 4, 1998 ("Ins.Policy"), and B, Declaration of Insurance for Michael D. Ogdon, effective Nov. 4, 1998, Certificate No. 1B98–70484 ("Ins. Dec.") at 1, ¶ A. The policy provides coverage for all services, supplies, treatments or conditions resulting from an illness or injury, except that it excluded from coverage any pre-existing medical conditions for the first two years and limited coverage of such conditions thereafter. Ins. Policy at 3; Ins. Dec. ¶ K(1); State Complaint ¶¶ 16, 17.

With respect to legal proceedings concerning the policy, it provides that:

(6) *SERVICE OF SUIT*—It is agreed that in the event of the failure of the Company [3] to pay any amount claimed to be due hereunder, the Company, at the request of the Insured Person, will submit to the jurisdiction of a Court of competent jurisdiction with the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against the Company upon this agreement, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

. . . . .

(16) If any dispute shall arise as to the amount to be paid under this insurance (liability being otherwise admitted), such dispute shall be referred to arbitration in accordance with procedures of the American Arbitration Association. Where any dispute is by this provision referred to arbitration, the making of an award shall be a condition precedent to any right of action against the Company.

Ins. Dec. ¶¶ B(6), (16).

### B. The Events Surrounding the Arbitration

On or about January 18, 1999, Ogdon allegedly received "emergency medical treatment" at a Florida hospital and, pursuant to the terms of his policy, submitted

---

**3.** The Insurance Policy refers to Sirius as the Company and to IMG as the Plan Administrator. Ins. Dec. ¶ A.

bills approximating $10,000 to Sirius, through IMG as plan administrator, requesting payment. State Compl. ¶¶ 18–19. After conducting an investigation and examining Ogdon's medical bills, IMG, for and on behalf of Sirius, denied the claim and refused to issue any payment, contending that all bills related to his treatment resulted from a pre-existing condition. *Id.* ¶ 20.

On or about January 31, 1999, Ogdon, by his attorneys (Defendants, R & M, through Rodriguez and Piloto), filed a complaint with the Indiana Department of Insurance, Consumer Services Division, in Indianapolis, alleging in relevant part that the January 1999, illness was not a pre-existing condition at the time of entering into the Insurance Policy contract, and further that Plaintiffs' denial of said claim was improper, pretextual, and in bad faith. State Compl. ¶ 21, Ex. C. IMG replied to this charge on February 17, 2000, denying it in full. *Id.* ¶ 23. Neither Sirius nor IMG ever admitted any liability under the Insurance Policy for these claims. *Id.* ¶ 20.

On February 25, 2000, Ogdon requested both verbally and in writing that IMG cancel the Insurance Policy and that the prorated premium be refunded. *Id.* ¶ 25, Ex. D. The policy provided that cancellation occurred at the option of IMG; IMG exercised this option on March 12, 2000, effective February 25, 2000, credited Ogdon's credit card account in the amount of $602.57, and informed Ogdon in writing that "[a]ll rights under this Certificate have been forfeited." *Id.* ¶ 26, Exs. E, F.

After notifying Plaintiffs of his desire to cancel the policy, but before Plaintiffs consented to its cancellation, on or about March 6, 2000, Ogdon's attorneys prepared a Statement of Claim and a Demand for Arbitration which were filed with Defendant, the American Arbitration Association ("AAA"). State Compl. ¶ 27, Ex. G. Ogdon

and his attorneys contended that this claim and demand were authorized by the arbitration provision contained in Section B(16) of the Insurance Declaration.

Upon receiving Ogdon's claim, the AAA assigned Defendant Brown as the case manager and on March 17, 2000, Brown notified Thomas Dawson of the law firm of LeBoeuf, Lamb Greene & MacRae, L.L.P. (whom paragraph B(6) of the Insurance Policy designated as Sirius' agent for purposes of service) of the request for arbitration which had been filed and laid out preliminary procedural matters. State Compl., Ex. H. On March 29, 2000, F. Jonathan Zusy, Vice President and General Counsel for IMG, responded to Brown's letter denying that the arbitration was authorized by the Insurance Policy and disputing the AAA's authority to proceed with the arbitration; IMG specifically objected to the arbitration proceedings and requested notification that the proposed arbitration had been withdrawn. State Compl., Ex. I. The next day, Brown, on behalf of the AAA, sent another letter to Dawson acknowledging the receipt of IMG's letter and placing Ogdon on notice that any response to IMG's letter was to be received on or before April 4, 2000. State Compl., Ex. J.

Once again, Dawson forwarded Brown's letter to IMG and Zusy responded, instructing Brown to direct further communications to him and reiterating IMG's position that the arbitration was unauthorized and non-consensual. State Compl., Ex. K. Thereafter, Brown directed correspondence to Zusy (in Indiana).

On April 7, 2000, Brown notified Ogdon (through his attorney) and IMG (through Zusy) that:

> The Association has carefully reviewed the positions and contentions of the parties as set forth in their correspondence. The claimant has met the filing require-

ments of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or under a court order staying this matter, the Association will proceed with further administration. The parties may wish to raise this issue with the arbitrator at or prior to the hearing.

State Compl., Ex. L. Zusy responded five days later requesting that Brown: (1) forward to him all "comments" received by AAA from Ogdon; (2) provide the names and title of all AAA employees who had reviewed Ogdon's claim and the comments received by AAA; (3) provide the names and titles of all employees who participated in the AAA's conclusion that Ogdon had met the AAA's filing requirements; (4) identify the legal and factual basis for the AAA's conclusion that it had the authority, control, or other personal jurisdiction over IMG; and (5) indicate whether the AAA intended to profit or "otherwise receive any value or benefits" from the proposed arbitration. State Compl., Ex. M.

Despite the April 7, 2000, letter from Brown stating that the AAA had "carefully reviewed the positions and contentions of the parties," Brown sent another request to Ogdon and IMG on April 14, 2000, noting that Ogdon had not responded to IMG's position on the dispute's arbitrability and informing him that unless he responded on or before April 19, 2000, the AAA would "assume that Claimant is in agreement with Respondent's position and we will close our file in the above matter." State Compl., Ex. N. After the AAA granted Ogdon a one-day extension, he responded that he did not share IMG's and Sirius' view that the dispute fell outside the Insurance Policy's arbitration provisions.

Thereafter, on May 10, 2000, Brown once again wrote the parties and told them:

The Association has reviewed the parties' contentions regarding the arbitrability of this matter. Please refer to our letter dated April 7, 2000 that indicates the Association will proceed forward in this matter in the absence of an agreement by the parties or a court order staying this matter.

The Association cannot determine issues of arbitrarily [sic]. In accordance with R–8(b) of the Rules, the arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.

The Association is proceeding with this matter in accordance with R–2 of our Rules, and my supervisor, John Germani, assisted in this decision.

State Compl., Ex. R. That same day, Brown sent the parties a list of potential arbitrators from which the panel for the arbitration were to be chosen.

On May 22, 2000, Plaintiffs filed a claim in Indiana state court, requesting a temporary restraining order as well as preliminary and permanent injunctive relief directed at stopping the arbitration proceedings, seeking a declaratory judgment clarifying the rights and obligations contained in the insurance policy, and claiming damages resulting from the Defendants' alleged abuse of process, malicious prosecution and bad faith arbitration. *See* State Compl. That same day, Plaintiffs' ex parte request for a temporary restraining order was granted and on May 31, 2000, the Marion County Superior Court granted Plaintiffs' request for preliminary injunctive relief and certain of Plaintiffs' requests for declaratory relief with respect to the Arbitration Proceedings and the subject insurance policy.

The AAA Defendants' motion to dismiss raises both jurisdictional and merit-based

defenses. They first contend that minimum contacts sufficient to constitutionally establish personal jurisdiction over Defendants Brown and Germani are lacking and that there is no personal jurisdiction over the AAA because it is not a necessary party to a suit related to the administration of arbitration and that full relief on the merits can be granted in this case without the AAA as a party. Next, the AAA Defendants contend that the Complaint fails to adequately state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), with respect to all of the individual claims. Finally, the AAA contends that, even if the complaint makes out a cognizable claim, the AAA Defendants are entitled to arbitral immunity. We shall address each issue *seriatim*.

### *Discussion*

#### A. *Standard of Review*

#### B. *Rule 12(b) Standard of Review*

■ Federal Rule of Civil Procedure 12(b)(2) permits the dismissal of a claim for "lack of jurisdiction over the person" and Rule 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief may be granted." *See* FED. R.CIV.P. ("Rule") 12(b)(2), (6). When considering a motion under Rule 12(b), the Court must examine the sufficiency of the plaintiff's complaint, not the merits of the lawsuit. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520–21 (7th Cir.1990); *Triad Assocs., Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 585 (7th Cir.1989), *abrogated on other grounds by Board of County Comm'rs, v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Dismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts which would entitle her to the relief sought. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir. 1991). To survive a motion to dismiss, a complaint must contain either "direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.... But such allegations need only state a possible claim, not a winning claim." *Herdrich v. Pegram,* 154 F.3d 362, 369 (7th Cir.1998), *rev'd on other grounds,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

■ We accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Dawson v. Gen. Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992); Rule 8(a). However, "a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 792 (7th Cir.1996) (quoting *Palda v. Gen. Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir.1995)). In considering a motion to dismiss under Rule 12(b)(2), we may also consider affidavits and other documentary evidence which have been filed, so long as any factual disputes are resolved in favor of the nonmovant. *McIlwee v. ADM Indus., Inc.,* 17 F.3d 222, 223 (7th Cir.1994); *Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1122 (7th Cir.1983).

#### C. *Lack of Personal Jurisdiction*

##### 1. *Minimum contacts of Brown and Germani*

■ The AAA Defendants' first argument is that Indiana's long-arm statute does not allow us to exercise personal jurisdiction over Defendants Brown and Germani. Courts have traditionally interpreted Indiana's long-arm statute as extending personal jurisdiction of courts in Indiana, including federal courts, to the limits per-

mitted under the due process clause of the Fourteenth Amendment. *E.g., Wallace v. Herron,* 778 F.2d 391, 392 (7th Cir.1985); *Intermatic, Inc. v. Taymac Corp.,* 815 F.Supp. 290, 292 (S.D.Ind.1993). However, the Indiana Supreme Court recently explained that the statute is more properly considered as an "enumerated acts" statute which requires the court to engage in a two-step process in order to determine whether it has jurisdiction over the parties to the case: first, the court must determine whether the defendant's contacts with the forum fall under the listed acts found in the long-arm statute; and secondly, if they do, the court must determine whether the defendant's contacts satisfy federal due process standards. *Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1232 (Ind.2000). Despite the Indiana Supreme Court's direction that we engage in the two-step analysis, IMG rightly notes that the AAA Defendants do not challenge the fact that first step is met here; instead, they skip to the second step and dispute whether there exist minimum contacts sufficient to allow the constitutional exercise of jurisdiction over the defendants.[4] Thus, while we acknowledge that Indiana's highest court has identified this long-arm statute as an "enumerated acts" statute, we follow the parties' lead and proceed directly to the constitutional issues raised herein.

■ Due process requires that a defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Wallace,* 778 F.2d at 393 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). A court

may obtain *in personam* jurisdiction over a defendant based upon either the defendant's general contacts with the forum (i.e., "sufficient 'continuous and systematic general ... contacts' with the State") or the defendant's specific contacts with the forum, where the controversy itself " 'is related to or arises out of the defendants' contacts with the forum.'" *Id.* (citing *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (internal quotation marks omitted)).

■ IMG does not contend that the contacts of Defendants Brown and Germani are of such a "continuous and systematic" nature such that general jurisdiction is warranted in this matter. Any such contention would be contrary to the undisputed facts before us, as both Brown and Germani have filed affidavits with the court affirming that the only contacts either party has had with Indiana are limited to the correspondence detailed above. *See* Brown Aff. and Brown Suppl. Aff.; Germani Aff. and Germani Suppl. Aff. These isolated letters are plainly insufficient to confer general jurisdiction over either of them.

■ Turning to the question of whether "specific jurisdiction" is warranted here, we note that the question of whether minimum contacts exist is one to be determined on a case-by-case basis. *Kulko v. Superior Court of Cal.,* 436 U.S. 84, 92–93, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Anthem Ins. Cos.,* 730 N.E.2d at 1235. While a single contact with a forum

---

4. Although the Defendants' Reply brief identifies the rule's language to the effect that jurisdiction is authorized "as to any actions arising from the following acts committed by him or her ... [,]" they do so in the context of

discussing which contacts are rightly considered by the court in ascertaining whether the constitutional requirement has been met, not whether the conduct alleged falls under one of the long-arm statute's "enumerated acts."

state may be enough to establish specific personal jurisdiction over the defendant, the contacts still must be such that they "create a 'substantial connection' with the forum state and the suit is based on [those] connections." *Anthem Ins. Cos.*, 730 N.E.2d at 1235 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). "The defendants' conduct and connection with Indiana must be such that they should reasonably anticipate being subject to the jurisdiction of an Indiana court." *Wallace*, 778 F.2d at 393–94 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). When assessing whether specific jurisdiction exists, the court must examine "the quality and nature of the activities taking place within the state to determine if they are related to the basis of the lawsuit and the result of deliberate conduct by the defendant." *Anthem Ins. Cos.*, 730 N.E.2d at 1236.

▬ Indiana courts have enumerated five factors to be considered in determining whether fair play and substantial justice would be served by a finding that jurisdiction is proper in a given case:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.... The first three are the primary factors in determining whether the *International Shoe* standards are met.

*Baseball Card World, Inc. v. Pannette*, 583 N.E.2d 753, 755 (Ind.Ct.App.1991) (quoting *Tietloff v. Lift–A–Loft Corp.*, 441 N.E.2d 986, 989 (Ind.Ct.App.1982)); *accord D'Iorio v. D'Iorio*, 694 N.E.2d 775, 778 (Ind.Ct. App.1998). In this analysis, each defen-

dant's contacts with Indiana must be assessed separately. *E.g.*, *Mullen v. Cogdell*, 643 N.E.2d 390, 398 (Ind.Ct.App.1994) (citing *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)).

▬ With these standards in mind, it is clear that any exercise of jurisdiction over Germani would be unconstitutional. Germani has had absolutely no contact with Indiana. His sole relationship to this litigation is as Brown's supervisor who "assisted" Brown in reaching the conclusion that the AAA should proceed with instituting the arbitration proceedings. Moreover, Germani states that the AAA's Chicago or Dallas office and not its Atlanta office, out of which he and Brown are based, normally handles Indiana-based arbitrations. In the absence of any contacts with Indiana, the due process clause " 'does not contemplate that a state may make a binding judgment ... against an individual....' " *Rush*, 444 U.S. at 332–33, 100 S.Ct. 571 (quoting *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. 154). Thus, the motion to dismiss the claims against Germani for lack of personal jurisdiction is granted.

▬ As for Brown, her contacts with Indiana consist of five letters she wrote to IMG which were sent to Zusy and two additional letters she sent to LeBoeuf, Lamb Greene & MacRae, L.L.P. in New York. Even if we consider all seven of these letters, they do no more than attempt to administer the procedures implemented by the AAA once Ogdon filed the claim for arbitration purportedly authorized by the terms of the Insurance Policy. Brown's letters do nothing more than notify IMG of the claim filed against it, request comments relating to IMG's contention that the arbitration is unauthorized, indicate the AAA's position that the arbitration must proceed, clarify the AAA's position that it does not review issues of arbitrability, and provide the parties with

a list of potential arbitrators. The "limited use of communication devices in interstate commerce will not automatically subject a non-resident defendant to personal jurisdiction in some other state. The courts have uniformly held that something more is required." *Reliable Tool & Mach. Co. v. U–Haul Int'l, Inc.*, 837 F.Supp. 274, 281 (N.D.Ind.1993) (and cases cited therein); *see also Cote v. Wadel,* 796 F.2d 981, 984 (7th Cir.1986) (holding that a handful of letters and phone calls are insufficient to establish specific jurisdiction over a defendant under Wisconsin's long-arm statute).

The facts of the case at bar are analogous to those which the Seventh Circuit confronted in *Wallace v. Herron, supra.* In *Wallace,* the plaintiffs sued three California attorneys and a California law firm for malicious prosecution arising out of a prior lawsuit in California in which the attorneys represented a couple who sued a number of parties including the plaintiff. The Seventh Circuit held that the attorneys' actions of serving interrogatories, requesting the production of documents, and causing the plaintiffs to respond to five complaints in the California lawsuit were insufficient to confer jurisdiction over the attorneys. *Id.* at 394. "The fact of the matter ... is that the defendants filed these motions on behalf of their clients in a California court pursuant to a California lawsuit, and it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts." *Id.*

Like the *Wallace* defendants, Brown's actions of engaging in the correspondence at issue herein were taken with respect to a quasi-legal proceeding that was not intended to occur in Indiana. If anything, Brown's correspondence was less purposefully directed than the actions of the *Wallace* defendants in that her letters were simply intended to inform IMG of the pro-

ceedings which had been initiated in another forum. IMG's claims against Brown stem from her alleged attempt to assert arbitral jurisdiction over IMG (on behalf of the AAA) for a Florida-based proceeding. These communications are clearly ancillary to that action. IMG has given us no reason to disregard or question the averments contained in Brown's two affidavits and we therefore conclude that it would violate the due process clause of the Fourteenth Amendment for an Indiana court to exercise *in personam* jurisdiction over Brown. The motion to dismiss the claims against Brown for lack of personal jurisdiction is granted.

### 2. The AAA as a necessary party

■ The only claims remaining for our consideration are against the AAA itself. The AAA first contends that we lack personal jurisdiction over it because it is not a "necessary party" to this litigation; alternatively, the AAA asserts that it enjoys "arbitral immunity" with respect to all of the claims against it and should therefore be dismissed. In evaluating this argument, we must distinguish among the various claims brought by IMG against the Defendants (including the AAA). Count I seeks damages for alleged tortious actions: abuse of process, malicious prosecution and bad faith arbitration, Count II seeks preliminary and permanent injunctive relief directed at staying the proposed arbitration, and Count III requests a declaratory judgment specifying that the proposed arbitration is improper and defining the rights of the parties to the Insurance Policy.

First, we note that the Insurance Policy states that any arbitration initiated pursuant to paragraph B(16) will proceed pursuant to the AAA's own rules and procedures, which include the following relevant provisions:

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary party in judicial proceedings relating to the arbitration.

. . . . .

(d) Neither the AAA nor any arbitrator shall be liable to any party for any act or omission in connection with any arbitration conducted under these rules.

Mot. to Dismiss of AAA Defendants, Brown Aff., Ex. 1, American Arbitration Association, Commercial Dispute Resolution Procedures (Including Mediation and Arbitration Rules), as amended and effective on January 1, 1999, R–50(b), (d). By agreeing to abide by these rules, the parties to the Insurance Policy and Declaration have tacitly agreed that the AAA is not a necessary party to any litigation about the arbitration and have in advance released the AAA from any liability related to actions or omissions in connection with an arbitration. One could reasonably conclude that these agreements alone suffice to preclude a claim against the AAA relating to an arbitration (including one alleging tortious actions) and would warrant dismissal of the claims against the AAA. However, we note that the rights and obligations contained in the Insurance Declaration are explicitly directed to the "Company" (defined to be Sirius) and not the "Plan Administrator" (defined to be IMG). Indeed, IMG disputes that it is a party to the Insurance Policy and has so contended from the outset.[5] Moreover, the intended scope of the release contained

in R–50(d) is an issue of fact that cannot be determined on the motion before the court at this time.

If we sidestep the AAA's Rules and turn to the merits of the AAA's alternative substantive arguments, the characterization of the AAA as an "unnecessary party" is not foreign to the courts. However, it most often arises in the context of the failure of the AAA (or a similarly-situated body which has contracted to provide arbitral services) to join a motion to remove a state court action to federal court or in deciding how such a body should be considered for the purpose of determining whether diversity jurisdiction exists. *See Aberle Hosiery Co. v. American Arbitration Ass'n*, 337 F.Supp. 90, 92 (E.D.Pa. 1972). Some courts, in reliance on this principle of "unnecessary party," have ruled that an arbitral body (such as the AAA) is not a proper party in a suit to determine the propriety of arbitration and have dismissed the claims against it. *See Hospitality Ventures of Coral Springs, L.C. v. Am. Arbitration Ass'n*, 755 So.2d 159, 160 (Fla.Ct.App.2000); *McKown v. Am. Arbitration Ass'n*, 213 Ga.App. 197, 444 S.E.2d 114, 115 (1994); *Candor Cent. Sch. Dist. v. Am. Arbitration Ass'n*, 97 Misc.2d 267, 411 N.Y.S.2d 162, 164 (1978); *Peters Sportswear Co. v. Am. Arbitration Ass'n*, 427 Pa. 152, 233 A.2d 558, 560 (1967); *see also Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir.1977) (holding that defendant arbitrators have no interest in underlying dispute between the parties to arbitration and should not be made parties

---

**5.** IMG's position in this regard is somewhat confusing. As Plan Administrator, presumably IMG is the entity that would review and determine the appropriateness of any claims submitted pursuant to the Insurance Policy. As such, any disputes over a claim denial would be directed to IMG and not Sirius. Moreover, the present suit initiated by both IMG and Sirius seeks injunctive and declara-

tory relief relating to the construction of the Insurance Policy itself. We question the basis for IMG's standing to seek such relief if it has no rights and responsibilities under the contract. While we reserve judgment on the issue, IMG's own position as a plaintiff in this suit appears to belie its claim that it is not subject to the rights and responsibilities set out in the Insurance Policy.

**628**

to that dispute). In so holding, these courts have concluded that "[t]he law does not require potential arbitrators to expend the time and money to participate in a lawsuit where the parties are fighting over the arbitrability of a dispute." *Hospitality Ventures of Coral Springs, L.C.,* 755 So.2d at 160; *see also McKown,* 444 S.E.2d at 115 ("[There is] a judicial preference to restrain parties to a controversy rather than restraining the tribunal from hearing the matter. . . ."). Applying this analysis, the AAA is unnecessary to the resolution of any claim directed at determining the propriety of arbitration and any claims against it should be dismissed.

 Other courts have approached these issues in terms of "arbitral immunity," dismissing claims related to the propriety of arbitral proceedings asserted against the AAA (or a similar sponsoring body). Noting that such bodies have no interest in the underlying disputes subject to the arbitration and that the arbitral decision makers need to be protected from undue influence to preserve the integrity of the arbitral decision making process, these courts conclude that the sponsoring body (or the arbitrators themselves) "should not become parties to that [underlying] dispute" and that they are entitled to enjoy immunity on this basis. *Tamari,* 552 F.2d at 781. Courts have also recognized that public policy strongly favors arbitration, analogizing to the principle of judicial immunity to shape the contours of arbitral immunity to suit. *See Olson v. Nat'l Ass'n of Sec. Dealers,* 85 F.3d 381, 382 (8th Cir.1996); *Austern v. Chicago Bd. Options Exch., Inc.,* 898 F.2d 882, 885–86 (2d Cir.1990); *Corey v. N.Y. Stock Exch.,* 691 F.2d 1205, 1208–11 (6th Cir.1982); *see also, Hawkins v. Nat'l Ass'n of Sec. Dealers Inc.,* 149 F.3d 330, 331 (5th Cir.1998) (dismissing claims against NASD pursuant to Rule 12(b)(6) as it enjoyed arbitral im-

munity from civil liability for the acts of its arbitrators in the course of conducting contractually agreed-upon arbitration proceedings).

Though the state of Indiana has not yet extended immunity to arbitral bodies, it, too, acknowledges the dual policies favoring arbitration and providing for judicial immunity. *E.g., Northwestern Mut. Life Ins. Co. v. Stinnett,* 698 N.E.2d 339, 343 (Ind.Ct.App.1998) (noting that it is "well known that Indiana recognizes a strong policy favoring enforcement of arbitration agreements"); *Newman v. Indiana,* 129 F.3d 937, 941 (7th Cir.1997) (noting that Indiana recognizes absolute judicial immunity). Thus, to the extent that IMG's claims against the AAA implicate these interests, we are confident that Indiana would extend arbitral immunity to protect the AAA and its agents from such claims.

 We look to the holding in *Caudle v. Am. Arbitration Ass'n,* 230 F.3d 920 (7th Cir.2000) to ascertain which claims would be subject to immunity, or alternatively, which claims for the resolution of which the AAA would be "unnecessary," and therefore properly dismissible. While the *Caudle* opinion turns on whether the amount in controversy necessary for diversity jurisdiction had been met, the Court first addressed the issue of arbitral immunity. The Seventh Circuit questioned whether the principle precluding civil claims against the AAA was properly to be considered a policy of immunity or a conclusion that "arbitrators and organizing bodies are not the real parties in interest." *Id.* at 922 (citing Fed.R.Civ.P. 17(a)). Judge Easterbrook, writing for the Seventh Circuit, proposed a hypothetical, one in which the AAA could neither enjoy immunity nor assert that it was not a real party in interest:

Suppose Caudle had paid the full $9,200 the AAA specified, and the Association

had pocketed the money without arbitrating the dispute; it is unlikely that the AAA could claim 'immunity' in response to a demand for a refund (or an order to furnish the arbitration service for which it had been paid).

*Id.* Thus, from this case, we reason that a claim intended to determine whether an arbitral body has the authority to proceed is one in which the arbitral body itself has no real interest and its decisionmaking in this regard would be protected by "arbitral immunity," or, alternatively, is one in which the body is not properly joined under Rule 17(a). In contrast, a claim asserting an independent cause of action against the arbitral body, one contending that the body has liability that is distinct from that of the parties to the arbitration proceeding, would not be subject to the proposed immunity and would be one in which the body is a real party in interest.

Applying this rationale to the case at bar, it is apparent that the AAA has no interest in Plaintiffs' claims in Counts II and III and is not a necessary party to a fair and complete resolution of those claims. These claims related to the underlying dispute, requesting equitable relief vis-a-vis the Insurance Policy; they are directed at the issue of whether the parties' dispute itself is arbitrable. Involvement by the AAA is therefore unnecessary to a resolution of issues of arbitrability and it is not a proper defendant with respect to those issues; stated otherwise, the AAA's decisions in this regard are protected by arbitral immunity. In any event, plaintiffs will be able to obtain all the equitable relief they seek in Counts II and III from the Non AAA Defendants. Any stay or injunctive relief imposed would be indirect-

ly binding upon the AAA and would preclude the arbitration from going forward. Thus, as against the AAA, Counts II and III are dismissed.

 However, Count I is analogous to the *Caudle* hypothetical, *supra,* and is distinguishable from the two counts which seek equitable relief. Count I alleges that the AAA colluded with the Non AAA Defendants in pursuing the arbitration, for which injury Plaintiffs seek money damages. If we assume that the complaint states a claim against the AAA (an issue we discuss more fully below), the AAA might have liability that is separate from and independent of that of the Non AAA Defendants. Thus, the AAA's contention that it is unnecessary to Count I is unavailing.[6]

### D. Failure to State a Claim

Having resolved all claims against Brown and Germani on personal jurisdiction grounds and Counts II and III against the AAA, the only remaining count to be analyzed under Rule 12(b)(6) is the portion of Count I against the AAA which alleges malicious prosecution, abuse of process and bad faith arbitration.

 As a preliminary matter, we note that the parties agree that the claim of "bad faith arbitration" is one that has not been recognized in Indiana or to our knowledge any other jurisdiction. The AAA asserts that this claim is more properly to be considered one for abuse of process. Although IMG responds that bad faith arbitration is an independent cause of action, it fails to identify the elements of this novel theory or to provide any analysis beyond asserting that it is a non-frivolous

---

6. Since we conclude, *infra,* that none of the allegations in Count I state a claim for relief as against the AAA, we need not determine whether it would enjoy arbitral immunity from them as a matter of law. However, the reasoning found in *Caudle* implies that no per se immunity would exist.

argument for the extension or modification of existing law or the establishment of new law. Having completely failed to brief the substantive contours of such a cause of action in the face of a motion to dismiss the claim, we hold that IMG's claim for bad faith arbitration is duplicative of its claim for abuse of process or in the alternative that it has waived any such claim. Thus, IMG's claim for bad faith arbitration is dismissed as against the AAA.

■■■■ Turning to IMG's malicious prosecution claim, in order to make out a prima facie case of malicious prosecution, the plaintiff must allege facts sufficient to support that: (1) the defendant instituted or caused to be instituted a prosecution against the plaintiff; (2) the defendant acted with malice in doing so; (3) the prosecution was instituted without probable cause; and (4) the prosecution terminated in the plaintiff's favor. *Butt v. McEvoy*, 669 N.E.2d 1015, 1017 (Ind.Ct.App.1996). Although traditionally intended to provide recourse to criminal defendants who have been wrongfully charged, it is also available to those who allege that civil proceedings have been maliciously initiated against them. *Mirka v. Fairfield of America, Inc.*, 627 N.E.2d 449, 451 n. 3 (Ind.Ct.App. 1994); *Wong v. Tabor*, 422 N.E.2d 1279, 1281 n. 2 (Ind.Ct.App.1981). In fact, Indiana courts have noted that the proper term for a claim such as IMG's (where the alleged proceeding was not criminal in nature) is for wrongful use of civil proceedings. *E.g.*, *Wong*, 422 N.E.2d at 1281 n. 2, 1284 (quoting RESTATEMENT (SECOND) OF TORTS § 674 cmt. j (1977)). In any event, the elements of the two claims are substantially similar. *Id.* The AAA disputes that it ever initiated or caused to be initiated a prosecution or that any such prosecution has been terminated in IMG's favor. We need not address here the first of these arguments as it is plainly apparent

that IMG has failed to allege facts sufficient to establish the claim's final element.

The Restatement provides that the termination necessary to state a claim for wrongful use of civil proceedings can be shown by:

> (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken.

*Id.* § 674 cmt. j, *quoted in*, *Wong*, 422 N.E.2d at 1284; *see also Hammond Lead Prods., Inc. v. Am. Cyanamid Co.*, 570 F.2d 668, 673 (7th Cir.1977) (applying Indiana law and citing § 674). For example, the granting of summary judgment in favor of the party alleging injury would constitute the "termination" of the prior proceedings. *Wong*, 422 N.E.2d at 1284. The Seventh Circuit expounded upon the rationale for requiring that the party bringing the claim for wrongful use of civil proceedings wait until the initial proceeding has terminated in his favor:

> It is both fair to the parties and economically convenient to the judicial system to allow defendant to proceed (unaffected by estoppel by judgment or like doctrines) with his original action. Defendant ought to have his day in court in the locus where he began the controversy. Until that first court has decided the merits, or has ruled that it will not decide the case for want of jurisdiction or improper venue, or defendant in his capacity as plaintiff in the first action has withdrawn from the first litigation, plaintiff is premature. To be sure,

plaintiff already has been injured by the bringing of the first action, but it is socially convenient to make him await the outcome of the first case in order to save the time and expenses of litigants and courts. As long as the proceedings are going on in the first court, the second court will not be bothered to hear the matter.

*Hammond Lead Prods., Inc.*, 570 F.2d at 672.

■ Indiana clearly requires that in order to maintain a cause of action for malicious prosecution or wrongful use of civil proceedings, it is necessary that "the primary action upon which malicious prosecution [or wrongful use of civil proceedings] is based has terminated in [the aggrieved party's] favor before the commencement of an action for malicious prosecution [or wrongful use of civil proceedings]." *First Fed. Sav. and Loan Ass'n of Gary v. Stone*, 467 N.E.2d 1226, 1235 (Ind.Ct.App.1984); *see also West v. Hayes*, 104 Ind. 251, 3 N.E. 932, 933 (1885) ("A right of action for a malicious prosecution does not arise until the action complained of is finally determined, and the fact of final determination must be set out in the petition."). Even if we assume that the AAA caused the arbitration at issue to be initiated (an assumption we shall refute shortly), that arbitration was not terminated at the time IMG filed the instant complaint and still has not been terminated. The only culminating actions to which IMG can point are the imposition of a temporary restraining order and preliminary injunction by the Indiana trial court prior to this action's removal to our court. Setting aside the fact that such relief had not been granted prior to the filing of the complaint (and therefore could not serve as a basis for IMG's claim asserted in that complaint), such preliminary relief is not a final decision on the merits of the litigation that would set the stage for dismissal of the arbitration, and in any event neither of these actions has resulted in the arbitration's termination in IMG's favor. *E.g., MacDonald v. Chicago Park Dist.*, 132 F.3d 355, 357–58 (7th Cir.1997). Thus, whether we construe IMG's claim to be one for malicious prosecution or for wrongful use of civil proceedings, the claim is not yet ripe and must be dismissed.

■ IMG's final claim is for abuse of process. A prima facie case of abuse of process requires proof of " 'first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceedings.' " *Groen v. Elkins*, 551 N.E.2d 876, 878 (Ind.Ct.App. 1990) (quoting Prosser and Keeton, The Law of Torts, 898 (5th ed.1984)).

■ Otherwise stated, "abuse of process requires a finding of misuse or misapplication of process, for an end other than that which it was designed to accomplish." *Reichhart v. City of New Haven*, 674 N.E.2d 27, 30 (Ind.Ct.App.1996) (quoting *Broadhurst v. Moenning*, 633 N.E.2d 326, 333 (Ind.Ct.App.1994) (internal quotation marks and citation omitted)). Proof of improper motive alone is insufficient to proceed with an abuse of process claim; a plaintiff must establish that a defendant has employed "improper 'process' before the court proceeds to an examination of the defendant's motive." *Id.* (citing *Comfax Corp. v. N. Am. Van Lines, Inc.*, 638 N.E.2d 476, 485 (Ind.Ct.App.1994)); *Watters v. Dinn*, 633 N.E.2d 280, 289.(Ind.Ct. App.1994); *Groen*, 551 N.E.2d at 876. Indiana courts have determined that a party may not be liable for abuse of process where legal process has been used to accomplish an outcome which that process was designed to accomplish. *Reichhart*, 674 N.E.2d at 31; *Comfax Corp.*, 638

N.E.2d at 485. "Process" in this context includes any action undertaken by a litigant in pursuing a legal claim. *Reichhart,* 674 N.E.2d at 32; *Groen,* 551 N.E.2d at 879.

 Since the defendant's motive is irrelevant unless there has been some process which has been misused, we consider the latter issue first. The AAA contends that it has not undertaken any "process" that can could be construed as having been misused. Insofar as the "process" which serves as the predicate for IMG's claim consists of the arbitration claim's initiation, the AAA rightfully responds that it was Ogdon and the other Non–AAA Defendants who initiated and employed this process, not the AAA. The AAA's role has been analogous to that of a court clerk who has placed on the docket a case filed by a claimant.

Accepting the analogy of a court clerk, it is clear from the facts of this case that the AAA was confronted with a claim for arbitration which it dutifully "docketed." In contrast to a clerk of court who would be required to docket any complaint filed with the court (at least if it satisfied facially the requirements of the applicable state or federal rules), the AAA must make a preliminary determination that the claim for arbitration is made pursuant to a contract authorizing arbitration; however, in neither case is the person responsible for docketing the claim expected or required to engage in a searching, substantive review of the claim's merits prior to docketing.

The contrary position (and the one asserted here by IMG) would require the AAA to become involved in conducting substantive analyses, such as determining the arbitrability of a claim, a requirement which could seriously impinge upon the AAA's ability to maintain neutrality in providing an arbitral forum. Clearly the case

managers employed by the AAA are not charged with weighing the merits of a given party's contention that a dispute is not arbitrable. IMG itself acknowledges that the AAA does not have the authority to determine issues of arbitrability, but cites the correspondence between Brown (on behalf of the AAA) and IMG as evidence that the AAA has in fact made such a determination; since it issued "process" on the basis of that determination, process which IMG characterizes as abusive, and ordered that arbitration proceedings to commence in the absence of a judicial stay, IMG believes that to be a sufficient basis for liability on the part of the AAA.

However, we are of the view that the performance of such administrative duties is not equivalent to issuing "process." The AAA's order to proceed with the arbitration is no different than that emanating from a court after a lawsuit has been filed—the case would proceed until a judicial determination was made, either *sua sponte* or in response to a motion, that the cause failed for lack of jurisdiction or on the merits of the claim. Although IMG contends that this is the exact situation it faced in the arbitration, the distinction is that the AAA and Brown were not competent to consider IMG's "motion." Whether those arguments should properly be put to an arbitration panel or advanced in a judicial forum is immaterial; what matters is that they were not properly before the AAA itself. In the absence of any "process" initiated or caused to be initiated by the AAA, IMG's allegation of abuse of process by the AAA warrants dismissal for failure to state a claim.

### Conclusion

For the reasons stated above, the AAA Defendants' motion to dismiss is *GRANTED.* All claims against Defendants Brown and Germani are hereby *DISMISSED* for lack of personal jurisdiction. Counts II

and III are *DISMISSED* as against the AAA inasmuch as it is an unnecessary party which has been improperly joined or, alternatively, because it enjoys arbitral immunity to such claims and Count I is *DISMISSED* as against the AAA for failure to state a claim.